O'NEAL et al. v. BUSH & TILLAR.
(No. 2368.)

(Supreme Court of Texas. Feb. 24, 1915.)

1. VENDOR AND PURCHASER ☞95—RIGHTS OF PARTIES—RIGHT OF VENDOR TO RESCIND—RETENTION OF LIQUIDATED DAMAGES.

Where sellers of real estate received from the purchasers a deposit of $10,000 to be retained as liquidated damages in case of nonconsummation of the sale and payment of price, and retained same on breach by purchasers, such sellers thereby lost their right to rescind the contract for such breach.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 158–160; Dec. Dig. ☞95.]

2. VENDOR AND PURCHASER ☞95—RIGHTS OF PARTIES—WAIVER BY VENDOR OF RIGHT TO RESCIND.

Where vendors of real estate, upon failure of the purchasers to pay an agreed installment of the price, agreed to act as agents of the purchasers in attempting to sell the land to other persons, they thereby waived their right under the original contract to retain $10,000, paid thereunder as liquidated damages in case of

breach, as well as their right to forfeit the buyers' interest in the original contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 158–160; Dec. Dig. ☞95.]

3. VENDOR AND PURCHASER ☞208—RIGHTS OF PARTIES—CONVEYANCE BY VENDOR—VENDORS AS AGENTS FOR PURCHASERS—DUTY OF AGENT.

Where vendors of real property undertook to negotiate a sale from the purchasers to third persons at the same price as the original contract specified, they thereby became such agents of the buyers as to bring them within the rule of law forbidding appropriation by an agent of the benefits and profits of the agency to the loss of his principal, and so could not declare a forfeiture of the original contract for nonpayment of price and sell for their own benefit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 424; Dec. Dig. ☞208.]

4. VENDOR AND PURCHASER ☞208—RIGHTS OF PARTIES—CONVEYANCE OF EQUITABLE TITLE BY HOLDER OF LEGAL TITLE.

The vendor of land with a reservation of lien to secure purchase money holds the legal title thereto, and may pass the purchaser's equitable title with the latter's consent by conveyance of his own legal title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 424; Dec. Dig. ☞208.]

5. ACTION ☞32—FORMS OF ACTION—STATUTE—FORM OF JUDGMENT.

There are no forms of action in this state, all suits being conducted by petition and answer under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1826, 1827, and, where the allegations of the petition are sufficient, the court may render such judgment as will meet them.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 257–261, 316; Dec. Dig. ☞32.]

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by E. V. O'Neal and others against Bush & Tillar. Judgment for plaintiffs for $25,000 was reversed and remanded by the Court of Civil Appeals (140 S. W. 242), and plaintiffs bring error. Reversed, and judgment of the district court affirmed.

Capps, Cantey, Hanger & Short, of Ft. Worth, for plaintiffs in error. Flournoy, Smith & Storer, of Ft. Worth, for defendants in error.

BROWN, C. J. We copy the following statement of facts from the opinion of the Court of Civil Appeals:

"Appellants owned about 50,000 acres of land in Scurry and other counties, which they contracted to sell to appellees. The contract was entered into on October 27, 1906, and was evidenced by a writing of that date. The price to be paid by appellees for the land was $6.50 per acre. They paid $10,000 on the purchase price at the time the contract was executed. By the terms of the contract, $15,000 of the part remaining unpaid of the purchase price was to be paid May 11, 1907, and the remainder thereof at later dates. It was stipulated that, in the event appellees should violate any of the terms and conditions of the contract and 'fail to perfect, consummate and carry out' same, the $10,000 paid by them should not be 'considered or become a partial payment upon the lands,' but should be 'received, held and kept' by appellants

as liquidated damages. The $15,000 due by appellees May 11, 1907, was not paid by them then nor afterwards. On that day appellant Tillar and his attorney and appellees Baker, J. F. O'Neal, and W. E. O'Neal had a conference in Mineral Wells. The testimony as to what then occurred was conflicting. That on the part of appellants was that Tillar then demanded payment of the $15,000, and, appellees refusing to pay, that he declared their rights under the contract to have been thereby forfeited. That on the part of appellees was that payment of the $15,000 was waived by Tillar, and that he agreed to go to Kansas City and act for them in closing a deal they claimed they had pending there with one Allen and one Rule, subject to an arrangement with Tillar as to certain details not specified in the testimony, whereby Allen and Rule were to assume their contract with appellants and pay them (appellees) the sum of $25,000. As a result of the conference, on the Monday following said Saturday, Tillar and Baker and J. F. O'Neal did go to Kansas City, where negotiations between Tillar and Allen and Rule were carried on, resulting in the consummation on May 22d of a contract between Tillar and Allen and Rule, whereby appellants sold the land to Allen and Rule, and agreed to convey same to Allen, for $6.50 per acre, the price appellees had agreed to pay for it, and $15,000. Appellees claimed that it was understood and agreed between themselves and Tillar that they should own all in excess of $6.50 per acre Allen and Rule might agree to pay for the land, that Tillar in negotiating and consummating the sale to Allen and Rule acted for them as well as for appellants, and that they were entitled to demand and receive of appellants as their own the excess over $6.50 per acre realized by appellants as a result of the sale to Allen and Rule. Their suit against appellants was commenced and prosecuted on this theory. Appellants denied the existence of such an understanding and agreement, and, among other things, claimed that appellees were advised by Tillar, two days before he consummated the sale to Allen and Rule, that he denied their right to any of the proceeds of the sale he was negotiating, and would refuse to account to them for any part of such proceeds. The sale by appellants to Allen and Rule was entirely on a credit—the purchase price being represented by Allen's promissory notes secured—except $15,000 thereof (by a vendor's lien on the land), and part of them, including said $15,000, being further secured by the guaranty of Rule and a pledge of certain life insurance policies issued to him. The $15,000 referred to as not secured by a vendor's lien was represented by notes in favor of appellee R. B. Pyron, who claimed same was paid to him by appellants on account of an indebtedness they owed to him as the result of other transactions between them. Appellants, however, claimed the $15,000 was paid to Pyron as a commission for his services in connection with the sale made to Allen and Rule. Appellees' suit was to recover the $10,000 paid by them to appellants at the time the contract of October 27, 1906, was entered into, and the excess over $6.50 per acre in addition to said $10,000 received by appellants on account of the sale to Allen and Rule. They obtained a judgment against appellants for the sum of $25,000 and interest thereon from May 11, 1907."

The Court of Civil Appeals made a very clear statement of the facts of this case, and pronounced a judgment which was sustained both by the findings of the jury and by the law, whereby they affirmed the judgment of the district court. Subsequently, upon a motion for rehearing, they set their former judgment aside, and entered judgment reversing and remanding the case to the district court for another trial.

It will be necessary, in a brief way, to review the facts as they are presented in the first opinion of the Court of Civil Appeals. The contract, as it is stated in the opinion of the Court of Civil Appeals, between Bush and Tillar and the two O'Neals and Pyron, was to the effect that the $10,000 which was paid by Pyron and his partners on the purchase of the land should not be entered as a credit upon the purchase price, but should be appropriated as damages for the failure to comply with the contract. This contract provided what should be the penalty of a failure to comply, and made the forfeiture of the $10,000, if it should occur, the compensation for a failure to make the payment in accordance with the contract.

[1] We are of opinion that this had the effect to deprive Bush and Tillar of the right to rescind the contract for the sale of the land. They provided their remedy by the appropriation of the $10,000 as damages for the failure of Pyron and the O'Neals to perform the terms of the contract. They could not have damages for the failure to perform the terms of the contract, and at the same time destroy that contract.

[2] If Bush and Tillar had the right to disaffirm the contract or set it aside on the failure to pay the $15,000 as agreed to, and if, when the parties met and the matter was discussed among them, they agreed upon a different procedure, whereby Bush and Tillar undertook for their debtors to carry out a transaction which the latter had made with other parties in Kansas City, then, we think, there can be no controversy that, by accepting such agency and agreeing to act with the Kansas City parties as substitutes for Pyron and his partners, Bush and Tillar waived their right of forfeiture altogether.

Pyron and his associates, anticipating the failure to be able to meet the contract, had made an agreement with certain parties in Kansas City, whereby it was agreed that those parties should take the land that Pyron and the O'Neals had bought from Bush and Tillar, and be substituted in the place of Pyron and the O'Neals, assuming their indebtedness to Bush and Tillar and taking the benefits of the contract between Bush and Tillar and the O'Neals and Pyron.

This was explained to Bush and Tillar at their conference, and it was agreed by the parties that Bush and Tillar would accept the substitution of these parties for Pyron and his partners. By this agreement Bush and Tillar certainly became the agents of Pyron and the O'Neals for the accomplishment of this purpose. Bush and Tillar held the legal title to the land in themselves, and they had the power to convey that title at the request of the owner of the equitable title, and they undertook to do just what the law authorized them to do, that is, by agreement of the owner of the equitable title one

who holds the legal title can convey it, and invest the legal and equitable title in his vendee.

[3] It is a well-settled rule, to which there is no exception, that one who undertakes to act as agent or trustee for another cannot appropriate the benefits of such transaction to himself. On the other hand, he must give to the principal for whom he acts the benefits and advantages, and if he appropriates the same he is liable to the principal, who may recover the thing appropriated or damages sustained by the act.

We can see no room for argument or discussion of this case as to the wrongful act of Bush and Tillar in appropriating to themselves the interest of Pyron and the O'Neals, consummating in their own names the identical transaction which they assumed and undertook to complete in the name of and for the benefit of Pyron and the O'Neals. We know of no authority in law or equity that will sustain any such action by an agent. Good faith on the part of the agent must be observed, and any violation of it will subject him to an action by the principal in order to adjust the rights between them. Such agent must answer to his principal fairly, truly, and justly. Messer-Moore Ins. Co. et al. v. Trotwood Park Land Co., 170 Ala. 473, 53 South. 228, Ann. Cas. 1912D, 718.

"The relation of an agent to his principal is ordinarily that of a fiduciary, and as such it is his duty to act with entire good faith and loyalty for the furtherance and advancement of the interests of his principal in all dealings concerning or affecting the subject-matter of his agency, and if he fails to do so he is responsible to his principal for any loss resulting therefrom, or the principal may repudiate the acts of the agent and recover back any money or property paid him, less the agent's proper charges and compensation; and an agent who has defrauded his principal cannot set up the negligence of such principal as a defense to an action for an accounting." 31 Cyc. p. 1430.

The facts found by the court of civil appeals show a gross fraud by Tillar and Bush in appropriating to their own benefit the transaction with Rule and Allen, when they had agreed to consummate it for the benefit of Pyron and the O'Neals. The Court of Civil Appeals affirmed the judgment of the district court which was in favor of the plaintiffs in error here, but upon motion for rehearing they set aside that judgment for a very peculiar reason.

[4] The court seems to hold that Bush and Tillar, who held the legal title to the land, could not by the consent and at the direction of Pyron and the O'Neals pass the equitable title to the purchasers in Kansas City. They did not cite any authority for that proposition, and we have not been able to find any that tends to support that position. It is unquestionably true that, as a matter of law, the vendor of land with a reservation of lien for the purchase money holds the legal title, and, on failure of the vendee to pay, the vendor may revoke the sale and resume the equitable as well as the legal title. The writer has not been able to find authority to support the proposition that one who holds the legal title cannot, by consent of the holder of the equitable, pass the equitable by the conveyance of the legal title. The legal title is paramount to the equitable title under such circumstances.

There can be no reasonable doubt about the proposition that, with the consent of the cestui que trust the vendor, in this case the trustee, might convey the whole right, legal and equitable, to the agreed purchaser, and the Court of Civil Appeals erred in setting the judgment aside.

[5] We have no forms of action in this state, but every suit is conducted by petition and answer. Articles 1826 and 1827, Vernon's Sayles' Civil Statutes; Carter v. Wallace, 2 Tex. 206.

When the allegations of the petition are sufficient, the court will render such judgment as will meet the requirements of the allegations in the petition, without regard to the form of action. If the party is entitled to damages and alleges facts which entitle him to damages, the court will give him damages. If a party alleges facts which entitle him to rescission, the court will give him rescission. If a party is entitled to an enforcement of a contract, the court will find in his favor to enforce it, without regard to the forms of action in the trial court, and will administer justice according to the allegations in the petition and briefs which are presented.

It is therefore ordered that the judgment of the Court of Civil Appeals upon rehearing, by which it set aside its former judgment and rendered judgment in favor of the appellants in this case, be and the same is hereby set aside and held for naught. And it appearing that the first judgment of the Court of Civil Appeals was by that court set aside on a question of procedure, it is ordered that the judgment of the district court be affirmed.

Judgment of district court affirmed.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes