**Tommy WHITE, Appellant,**

v.

**Travis HUGHS, Individually & on Behalf of Jennifer Holly Hughs, a Minor, Benny Thompson, and Myrl Wood, Appellees.**

No. 06–93–00030–CV.

Court of Appeals of Texas, Texarkana.

Dec. 7, 1993.

On Motion for Rehearing Dec. 30, 1993.

OPINION

GRANT, Justice.

Tommy White appeals from an adverse judgment in his trespass to try title action against Travis Hughs, individually and on behalf of Jennifer Holly Hughs, a minor, Benny Thompson, and Myrl Wood. He contends that the trial court erred in rendering judgment and in making conclusions of law number six and three because there was no evidence to support the judgment or the conclusions, in admitting testimony contrary to judicial admissions by the appellees, in finding that the contract of sale was terminated for failure to pay 1987 taxes because the undisputed evidence showed that all such payments had been made, in ruling that the cancellation of the contract was improper, in ruling a subsequent conveyance to be valid because it was not supported by the evidence, and in finding that damages and fraud were not supported by the evidence.

On October 24, 1993, Tommy White entered into a contract to purchase a house and lot from Travis Hughs and his now deceased wife, Marsha Hughs. In the contract, White agreed to pay a purchase price of $14,500. The amount of $4,938.02 constituted a purchase of the Hughses' equity in the property, and the remaining $9,561.98 was the amount remaining on an indebtedness secured by a lien against the property held by State First National Bank. The contract provided that White would pay off the equity in fourteen monthly payments of $400 per month, with a final payment of $428. Simultaneously, White was to tender an additional $225 per month which was to be applied to the monthly payment to State First National Bank. The contract provided that after the Hughses' equity was paid off, the monthly payment would be reduced to $300 per month until the balance of the State First National Bank note was paid off on October 25, 1988. The monthly payment to State First National Bank was $219.77 per month. The contract further provided that "[t]he balance between the amount paid by the Buyer and the amount of the note at State First National

Roscoe R. Jones, Texarkana, Guardian Ad Litem.

William G. Bullock, Patton, Haltom, Roberts, McWilliams & Greer, LLP, Texarkana, for Hughes.

Jerry A. Rochelle, Lavender, Rochelle, Barnette, Dickerson & Pickett, Texarkana, for Wood.

William V. Brown, Jr., Texarkana, for appellant.

B.A. Britt, Jr., Raffaelli, Howell & Britt, Texarkana, for Thompson.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

Bank shall be applied to escrow for taxes and insurance." The contract named Myrl Wood as the Hughses' agent to collect all monthly payments.

All parties agree that White paid the entire purchase price for the property as provided for in the contract of sale. There is conflicting testimony about whether he paid the amounts earmarked for the escrow account to pay the 1987 and 1988 taxes. There are no documentary records of the payments. Apparently White paid exclusively in cash, and Myrl Wood, upon the final completion of the sale of this property to another person, destroyed all records of White's payments.

A document entitled "Amendment to Contract of Sale," signed by all parties and dated October 15, 1986, reduced the payments due from $300 a month to $250 a month after the Hughses' equity was paid. The evidence shows that this occurred because the insurance on the property (which to that point had been paid out of escrow by Wood) lapsed, and the amendment to the contract provided that White would provide the insurance on the property. Accordingly, if all payments were made in full, approximately $370 annually would have been deposited in the escrow account for the purpose of paying the property taxes. The evidence indicates that the taxes amounted to approximately $320 annually.

Wood testified that there was insufficient escrow tendered during the last two years of the contract to provide payment of the taxes for 1987 and for ten months of 1988. At Travis Hughs's direction, Wood paid the 1987 taxes after they became delinquent. Hughs testified that, because the property was in his name, the taxing entities were threatening him with court action and the resultant expenses; therefore, he paid the 1987 taxes in August 1988. After White finished paying the purchase money on the property in October, Hughs had a warranty deed prepared by his attorney, which could be picked up by White at a local title company, upon payment of the amount remaining due. As part of the closing costs, the title company included a title insurance policy and the amount of taxes that had been paid by Hughs for 1987 and the taxes remaining owing for 1988. White took exception to this amount and directed them to delete the title insurance policy, which lowered the remaining amount due to approximately $600, for payment of the taxes. After a discussion with Wood, White agreed to pay out the amounts due in monthly payments from November 1989 to January 1990. However, after that discussion, White did nothing. He neither made the payments as agreed nor again contacted either the title company, Wood, or the Hughses.

After the time for payment had expired in January of 1990, the Hughses declared a default under paragraph five of the agreement[1], retook possession of the property, and sold the property for $5,000 to Benny Thompson, another appellee in the present suit.

White brought a trespass to try title action in an effort to show his ownership of title to the property in a trial to the court. The trial court found that, even though White had paid the entire purchase price of the property, he had not fulfilled the terms of the contract because he had refused to pay the taxes on the property. Based upon this fact finding, the trial court determined that White had

**1. FIFTH:** In the event Buyer shall default in the prompt payment of said indebtedness or shall violate or omit to perform any of the provisions of this agreement and such default, violation or omission shall continue for a period of thirty (30) days, then in any of such events Seller may elect, Buyer expressly waiving demand and notice, to declare the entire unpaid indebtedness, together with all interest then accrued thereon, immediately due and payable and enforce the collection thereof, or to declare this contract canceled and of no further force and effect, and in the event Seller elects to declare this contract canceled and of no further force and effect, all monies that have been paid to or deposited with Seller hereunder shall be forfeited and belong to Seller as liquidated damages to compensate Seller for breach of this contract and for rental and deterioration of the property, and immediately upon this contract being declared canceled and of no further force and effect all the rights, claims and interest of the Buyer in and to said property shall thereupon terminate and be at an end and the property shall unconditionally belong to Seller.

failed to fulfill his burden to show that he had superior title and could not recover under his trespass to try title action.

■ We first address White's no evidence contentions: White had the burden of proof; thus, he must show that he proved his case as a matter of law. He must demonstrate that the evidence conclusively established all vital facts in support of the issue. In our review, we employ a two-prong test. First, we examine the record for evidence that supports the finding, ignoring all evidence to the contrary. If there is no evidence to support the finding, we then examine the whole record to determine if the contrary position was established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Since there is evidence to support the finding, we do not reach the second prong of the test.

■ White contends that the trial court erred in making the following conclusion of law (number three):

White's refusal to pay 1987 ad valorem taxes and any other taxes due on the subject real property, together with his failure to keep the property and improvements properly insured, constituted a breach and an event of default under the terms and provisions of such Contract of Sale.

The seller's agent, Myrl Wood, testified that White had failed to pay the escrow amounts for over a year before the taxes came due. There is uncontroverted evidence that the taxes were paid at the direction of and with the money of the seller. There is also some evidence that White failed to insure the property after a policy lapse. This constitutes some evidence in support of the conclusion, and White's contention fails.

■ White next contends that the trial court erred in making conclusion of law number six. This conclusion reads as follows:

White does not have equitable title to maintain an action for trespass to try title in that White did not fully perform under the terms of the Contract of Sale by his failure to pay, when due, the ad valorem taxes referenced above, and further, by his failure to properly insure the subject real property and improvements thereon.

Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract. Upon such performance, he becomes vested with an equitable title to the property which is sufficient to allow him to maintain his action in trespass to try title. *Johnson v. Wood*, 138 Tex. 106, 157 S.W.2d 146 (1941); *Brown v. Davila*, 807 S.W.2d 12, 14 (Tex.App.—Corpus Christi 1991, no writ). The first question is whether there is any evidence to support the trial court's conclusion that White had failed to meet his burden of proof and show that he held equitable title to the property. The contract provided that the buyer was responsible for all taxes and insurance as they accrued. It further provided that if the buyer violated or failed to perform any provision of the agreement for over a period of thirty days, the seller could elect to declare the contract cancelled and retain all monies paid as liquidated damages to compensate the seller for breach of contract and that the buyer's interest in the property would immediately terminate. There is evidence that White failed to pay the taxes as they came due. This constitutes a breach. Therefore, he did not fully perform the contract as required in order to claim under an equitable title. There is some evidence to support the trial court's finding on this matter.

Counsel further argues that there is no evidence to support the judgment because White was vested with equitable title. A no evidence point is inappropriate in this context, since White had the burden of proof to show that he held title. We therefore look to see if he proved his case as a matter of law. As previously discussed, there is some evidence that White was not vested with equitable title. There is evidence that he breached the contract, and the terms of the contract provide for the remedy that was utilized. Accordingly, this argument is also without merit.

White next contends that the trial court erred in allowing testimony into evidence about the nonpayment of taxes or insurance because Hughs and Wood had judicially admitted that all payments had been made. However, counsel has not directed the court to any judicial admission made by either Hughs or Wood. Extensive portions of the record are quoted in the argument under this point of error. Examined in context, this testimony is not inconsistent. It merely responds to different questions about the same topic in slightly different ways.

For example, at one point, Mrs. Wood testified that the payments on the notes were made. She also testified that there was not sufficient money paid by White to also take care of maintaining the escrow account. She did testify by deposition that she had periodically collected enough money to pay the taxes but then also testified that she had not collected sufficient funds to do so during the last year of the contract. She testified that White had failed to pay the escrow amount to the extent that the fund was completely depleted and the 1987 taxes could not be paid. No judicial admission has been shown.

Hughs suggests that White is relying upon a particular discovery response as a judicial admission. This response to discovery states that the defendant was no longer in possession of any record showing the dates of payment and that all payments of principal and interest owing on the original purchase price were eventually paid. Even assuming that this response to discovery is the one relied upon by White, this particular point is one that was never contested at trial. None of the cited testimony contradicts the flat statement that all principal and interest was eventually paid. The breach was not failing to pay the principal and interest, but rather failing to pay the taxes. This point of error is overruled.

Counsel next contends that the trial court erred in finding that the contract of sale was properly terminated for failure to pay 1987 taxes because all payments under the contract were made. Because White had the burden of proof on this point and because White does not specify the basis for his attack on this evidence, we shall treat this point and later points in the same vein as being a contention that the finding was so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. See Robert W. Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Tex.L.Rev. 361 (1960). In reviewing these points, we shall examine all of the evidence in the record that is relevant to the fact being challenged. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442 (Tex.1989). White testified that he had paid sufficient funds for payment of taxes. Wood testified that he had not. There is a conflict in the testimony, which was resolved by the fact finder in favor of the Hughses. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The finding is not against the great weight and preponderance of the evidence so as to be manifestly unjust. This point of error is overruled.

Counsel next contends that the trial court erred by ruling that the cancellation was proper because the Hughses failed to comply with Tex.Prop.Code Ann. §§ 5.061–5.063 (Vernon 1984). This is not an evidentiary challenge but challenges a legal ruling of the court. Sections 5.061–5.063 define a timetable and method by which notice of forfeiture and acceleration may be utilized by a seller. Section 5.061(3) provides that a seller may enforce a forfeiture of interest under an executory contract for conveyance of real property used or to be used as the purchaser's residence only after notifying the purchaser of the seller's intent to enforce the forfeiture and acceleration and the expiration of a sixty-day period after the date notice is given if the purchaser has paid more than twenty percent of the purchase price.

This argument was not raised in the trial court. It does not appear in the plaintiff's pleadings, no objection was made on that basis, there was no evidence taken on this issue, and there were no requests for findings of fact and conclusions of law concerning this question. Such an issue may not be

raised for the first time on appeal. *Stafford v. Stafford,* 726 S.W.2d 14, 15 (Tex.1987); *State of Cal. Dept. of Mental Hygiene v. Bank of Southwest Nat'l Assoc.,* 163 Tex. 314, 354 S.W.2d 576 (1962). Furthermore, White was notified of the imminent cancellation of the contract more than sixty days before it occurred and, since White did not claim the property as his residence, the statute does not apply by its own terms. This point of error is overruled.

White next contends that the trial court erred in ruling that the subsequent conveyance to Benny Thompson was valid because there was no or insufficient evidence in the record to support such a ruling. Based upon our discussion of the previous evidence points, we have determined that title to the property lay in Hughs. Therefore, he had both the power and the right to transfer that property to whomever he chose. Accordingly, the subsequent conveyance was valid. This point of error is overruled.

White next contends that the trial court erred in finding that White had failed to submit evidence about damages suffered upon which a judgment could be predicated. Since White did not prevail, no damages could be properly awarded. The requested relief was recovery of the property by White. Accordingly, if White had prevailed, his judgment would have, in large part, consisted of his recovery of the property. Based upon our disposition of the previous points, this point of error is moot.

■ White finally contends that the trial court erred in finding that no fraud was perpetrated by any of the named defendants against White. It was White's burden to prove that fraud existed. Therefore, since the trial court made an express finding to the contrary, he must show that the finding was against the great weight and preponderance of the evidence so as to be manifestly unjust. We first look for evidence that supports the finding. As previously discussed, there is evidence that White did not pay the escrow as required and that he refused to pay the taxes that were due. White testified that he did. The Hughses then declared the contract breached and took action in accordance with the terms of the contract. White's contention of fraud was based upon his contention that he had paid all the money for the taxes. The fact finder's finding to the contrary was not against the great weight and preponderance of the evidence so as to be manifestly unjust. Thus, we cannot find that White proved fraud as a matter of law. This point of error is overruled.

■ We recognize, as did the trial court in comments made at the time of the pronouncement of the judgment, that the outcome of this case seems harsh.[2] This is because the amount that the buyer failed to pay in taxes was relatively small in comparison with the amount of purchase money that he did pay. However, parties to a contract may agree upon remedies for breach. *O'Neal v. Bush & Tillar,* 108 Tex. 246, 173 S.W. 869 (1915); *Stergios v. Babcock,* 568 S.W.2d 707 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). When entering into a contract for the purchase of realty, the parties may provide for repossession of the property or cancellation of the sale upon breach. *Nichols v. Novich,* 276 S.W.2d 348 (Tex.Civ. App.—San Antonio 1954, writ ref'd n.r.e.). In the present case, the consequences of any breach are set forth in the contract entered into by the parties.

In *De Leon v. Aldrete,* 398 S.W.2d 160 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.), in a factually similar situation, the court held that a breaching purchaser of realty could recover the amounts paid to the vendor prior to the breach. (The purchaser had paid over seventy percent of the purchase price.) The court held that the vendor had no right to retain the purchase money and also recover the land, and directed the

2. In the case of consumer goods, some protection is also offered by Tex.Bus. & Com.Code Ann. § 9.505 (Vernon 1991), which requires that if sixty percent of the purchase price has been paid, the party taking possession must sell the property and account to the debtor for any surplus. No such legal requirement exists for transactions in real estate.

return of the purchase money, less an amount proven as damages, to the defaulting purchaser. That case is distinguishable from the present case because there was no forfeiture clause in the contract in the *De Leon* case, and the *De Leon* case was not in the nature of a trespass to try title. In the present case, the purchase contract contains an express forfeiture clause that provides the remedy utilized by the seller.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

On rehearing, White urges that Myrl Wood admitted that she was paid in full for the 1987 taxes. From Wood's deposition, the following statement was read into evidence: "I periodically collected enough money to pay the taxes." However, Wood later testified that White had not complied with all the terms of the contract of sale because he had not paid enough money for the 1987 taxes.

When testimony of the same witness raises and supports a determinative issue of fact but further testimony denies the existence thereof or removes support earlier supplied by that witness, the presented matter must be resolved by the finder of fact. *Proctor v. Southland Life Ins. Co.*, 522 S.W.2d 261 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.).

The trial court, acting as fact finder, found that "White did fail to pay, in accordance with Paragraph 7 of the Contract of Sale, ad valorem taxes due for 1987." The court further found that Wood had paid the ad valorem taxes due by her personal check. Accordingly, the finder of fact has resolved this matter, and White's contention that only one outcome was possible from the evidence presented is not supported by the record.

The motion for rehearing is overruled.