

# NUMBER 13-06-601-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHN WILLIAM JOHNSON, ET AL.,                                    Appellants,

v.

ARANSAS COUNTY NAVIGATION DISTRICT NO. 1,              Appellee.

## On appeal from the 36th District Court
## of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Vela
Memorandum Opinion by Justice Vela**

This appeal is from an order of the trial court granting partial summary judgment in

favor of Aransas County Navigation District No. 1 (the "District") on its claim that it is the

owner in fee simple of real property located in Fulton, Texas.[1]  Appellees, John William

Johnson, Bobbie Jean Hoofard, & David Glenn Moss, temporary administrator of the estate

of Deborah Denise Johnson Gunnels, deceased (the "Johnsons") also claimed to own the

same property and moved for summary judgment that was denied.  The trial court also

awarded attorney's fees in favor of the District.  The Johnsons raise three issues on

appeal:  (1) the trial court erred in granting the summary judgment motion and denying their

motion; (2) the trial court erred in sustaining the District's objections to the Johnsons'

summary judgment evidence; and (3) the trial court erred in awarding the District attorney's

fees.  We reverse and render.

## I. BACKGROUND

The Johnsons filed suit against the District alleging that they owned the entire fee

simple estate in the real property and all of the improvements, described in their petition

as Johnson's Fulton Beach Marina Improvements.  In 1947, the District received a patent

granting the District a parcel of land on the western shore of Aransas Bay in the town of

Fulton.  In 1992, the District took physical possession of a portion of the Fulton Beach

Marina.  The Johnsons sued to defend ownership of what they believed was their land and

the District countersued, claiming equitable title based upon a contract entered into by

certain parties in 1946.

In 1946, the District wanted to make certain harbor improvements in front of a strip

of water in the townsite of Fulton extending from the south line of Palmetto Street to the

---

[1]This claim is brought under the 1946 Contract, which was severed from the boundary dispute.  Upon severance, this claim became final and appealable.  The boundary dispute litigation was determined in a prior opinion of this Court in *Aransas County Navigation Dist. v. Johnson*, No. 13-05-563-CV, 2008 WL 1901676 (Tex. App.–Corpus Christi Apr. 29, 2008, no pet.) (mem. op.).

2

North Line of Cactus Street. As a result, a contract with several owners, including the Johnsons, who owned one of the parcels, was drafted. The proposed contract stated the District needed property for dumping spoils from dredging. The improvements called for dredging the harbor, dumping spoils, constructing a breakwater, and requiring the District to perform other improvements. The proposed contract specifically described the property it needed to make harbor improvements. There were six separate parcels of land, individually owned, which the District sought to utilize for improvements. The contract stated that the landowners acknowledged that the improvements would enhance the value of their properties. In consideration for such improvements, the landowners would convey the specified properties to the District in fee simple in exchange for ninety-nine year leases.

However, not all landowners executed the contract. In fact, while the Johnsons' predecessors signed, there were three owners out of the six land owners who did not sign. The proposed contract also included a "proposed form of 99-year lease." The only version of the contract that has been located is missing the signatures of three of the land owners. The executed leases are not among the documents made part of the record. The partially signed version of the 1946 proposed contract was recorded in the deed records in Aransas County in 1953.

The Johnsons filed suit against the District, alleging that they owned the property known as "Johnson's Fulton Beach Marina." The petition urged that at some point the District began asserting a claim of an ownership estate or a right to possession to that portion of the Johnsons' Fulton Beach Marina improvements that had originally been constructed by the Johnsons and their predecessors-in-title. The petition stated that the District asserted a claim to the property by attempting to lease boat slips to individuals who

were told to pay rent to the District rather than to the Johnsons. The Johnsons urged an unlawful taking, sought declaratory and injunctive relief, as well as damages and attorney's fees. The District answered and counterclaimed, arguing that it was the owner of the property it called the "Waterfront Reserve." Its counterclaim was brought to establish its equitable title in the property, that the Johnsons occupied the Waterfront Reserve as tenants of the District and that the Johnsons had no right to possess or interfere with the District's possession of the property. It is undisputed that the Johnsons predecessors acquired the property in the 1930's, have operated it as a marina since that time, and have always paid taxes on it.

Thereafter, the District moved for summary judgment claiming that it was unnecessary for all parties to sign the 1946 contract. The summary judgment evidence included an affidavit of Ron Roe who averred that since 1946 the District has made a number of improvements to the waterfront, including the construction of a breakwater, dredging a harbor, and dumping spoils from dredging operations. The District also attached the contract previously discussed. As supplemental evidence, the District attached excerpts of John William Johnson's deposition. In his deposition, Johnson stated that he had not heard of the proposed contract before the litigation at issue. He agreed that there was a harbor and channel dredged and that the District constructed a breakwater. He did not know what the term "other improvements" referred to in the proposed contract.

The Johnsons also filed a motion for partial summary judgment on the contract claim. They urged that the contract should not be enforced because it was not signed, there was an unreasonable delay in recording it, the contract terms were uncertain, the

4

construction of the harbor was for the general welfare and should not have served as consideration for taking private land without just compensation, there was no credible evidence of a written conveyance and the former District chairman confirmed that there was no agreement on the alleged 1946 contract.[2] As summary judgment evidence, the Johnsons submitted the proposed contract and attached lease and deposition excerpts from Raymond Owens, who had served on the District board. They also attempted to supplement the summary judgment motion with additional evidence. The District objected to the additional evidence submitted, as well as to Raymond Owens' deposition excerpts. The objections were sustained.

## II. STANDARD OF REVIEW

When both parties move for summary judgment, and the trial court grants one motion and denies the other, the appellate court considers the summary judgment evidence presented by both sides, determines all questions presented, and if it determines the trial court erred, renders the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000). We review the trial court's summary judgment de novo. *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Id.*

---

[2]The trial court sustained the objections to the testimony of Raymond Owens, the former District chairman. However, the District filed the same evidence in response. Because the court sustained the objection, we do not consider it.

III. ANALYSIS

Here, the trial court determined that the District has equitable title in the property at issue. Equitable title may be shown when the plaintiff proves a valid contract for sale and full performance of the obligations under the contract. *White v. Hughs,* 867 S.W.2d 846, 849 (Tex. App.–Texarkana 1993, no writ). Upon such performance, the party becomes vested with equitable title to the property. *Id.* Whether an agreement is an enforceable contract is generally a question of law. *Meru v. Huerta,* 136 S.W.3d 383, 390 (Tex. App.–Corpus Christi 2004, no pet.). Therefore, in order to prevail on summary judgment, the District was required to establish both a valid contract of sale and full performance of the contractual obligations.

In order for a contract to be enforceable, there must be an offer, an acceptance in strict compliance with the terms of the offer, there must be terms of the offer, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane*, Inc. 115 S.W.3d 287, 291 (Tex. App.–Corpus Christi 2003, pet. denied). All of these elements must be met in order for the contract to be enforceable. A primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Gracia v. RC Cola -7-Up Bottling Co.,* 667 S.W.2d 517, 520 (Tex. 1983). Contracts usually require mutual assent to be enforceable. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). Evidence of mutual assent generally requires the signatures of all the parties. *Id*.

For purposes of determining the viability of the District's motion for summary judgment, we look at the contract to attempt to discern the true intent of the parties as

6

expressed in the proposed 1946 contract. In determining if there was a valid, enforceable contract we consider whether the language in this particular contract shows the parties' intent to require all landowners to sign in order for the contract to be binding. The Johnsons urge that the contract was not validly formed—it was missing the signatures of three property owners—even though the Johnsons' predecessors were not among the owners who did not sign. The District urges that there is nothing in the contract that requires all parties to sign before the contract becomes enforceable.

A review of the contract refers to the six landowners as the "parties of the second part." It further states that the District, as the "party of the first part" needed the described property belonging to the "parties of the second part for the purpose of dumping spoils and other purposes in connection with the making of harbor improvements." The land it desired to make harbor improvements upon extended from the "South Line of Palmetto Street to the North line of Cactus Street." The described land that the District needed encompassed all of the properties described in the agreement, not just the parcel owned by the Johnsons. It is undisputed that the District did not use any of the six parcels for purposes of dumping spoils, though it was the stated purpose in the proposed 1946 agreement. Finally, the agreement stated that "the party of the first part agrees that in consideration of the conveyance by the parties of the second part of the above described property that the party of the first part will make the above mentioned harbor improvements."

The District argues that there is nothing in the contract that says that the parties intended the contract to be an "all or nothing" proposition. The contract could have so stated, if that was the parties' intentions. They urge us to construe the contract as valid, rather than invalid. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979).

7

The proposed contract, as written, clearly expresses that the District wanted the property belonging to all of the landowners, not piecemeal. The agreement consistently refers to the property owners jointly, as "parties" of the second part. The most reasonable inference to be drawn is that the proposed agreement was not intended to be binding unless executed by everyone. This inference is supported by what actually happened. The contract was never executed by all of the owners, the leases were never found, the spoils were never dumped on the property, the Johnsons paid property taxes on the property they believed they owned and acted in every way as if it owned the property for all years preceding and after the proposed 1946 contract. While the District urges this Court to except it from the general rule that a contract generally requires the mutual assent of all the parties, as the movant, it needed to establish as a matter of law that the 1946 contract was not joint, but several. There was no evidence presented, however, that this is what anyone intended. The District did not establish its right to summary judgment as a matter of law.

The Johnsons also urge that the agreement is too uncertain to be enforceable. To be enforceable as a contract for the sale of land the essential elements must be expressed in a manner that makes them understandable without looking to parol evidence. *Condovest Corp. v. John Street Builders, Inc.*, 662 S.W.2d 138, 140 (Tex. App.–Austin 1983, no writ). When the remedy is specific performance, greater certainty respecting the terms and conditions of a contract sought to be enforced is required in equity than at law. *Burr v. Greenland,* 356 S.W.2d 370, 373 (Tex. Civ. App.–El Paso 1962, writ ref'd n.r.e.).

Here, the proposed contract required the District to dredge the harbor, dump spoils, construct a breakwater and perform "other improvements." It is undisputed that the District

8

dredged the harbor and constructed a breakwater.  It is also undisputed that the spoils were dumped on property other than the property owned by those six landowners that were named in the proposed contract.  As to "other improvements," it is unclear what the District was supposed to do and equally unclear if it complied with its obligation to perform.  A contract's terms are to be expressed with enough certainty so that the duties and conditions can be determined with reasonable certainty.  The District urges that it met its obligations under the contract.  It seeks to enforce, in equity, an agreement that does not define exactly what the District was required to do in exchange for ownership of the Johnsons' and the other landowners' properties.  The proposed contract is simply too unclear to determine its meaning.  The Johnsons' first issue is sustained.

The Johnsons urge by their third issue that the trial court erred in awarding attorney's fees to the District because it should not have prevailed.  The District agrees that the award of attorney's fees should be vacated if this Court concludes that the summary judgment should not have been granted.  The Johnsons' third issue is sustained.

The Johnsons urge in issue two that the trial court erred in sustaining the District's objections to the Johnsons' summary judgment evidence.  As the issue is not dispositive, we do not address it.  *See* TEX. R. APP. P. 47.1.

IV.  CONCLUSION

The judgment of the trial court is reversed and rendered.


ROSE VELA
Justice

Memorandum Opinion delivered and
filed this 2nd day of October, 2008.

9