

In The
Court of Appeals
Seventh District of Texas at Amarillo

Nos. 07-22-00144-CV

TIM BARKLEY AND TERESA BARKLEY, APPELLANTS

V.

JAMES CONNELLY AND KIKI CONNELLY, APPELLEES

On Appeal from the 84th District Court
Hansford County, Texas
Trial Court No. CV05564, Honorable Curt Brancheau, Presiding

June 13, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Tim and Teresa Barkley, plaintiffs below, appeal from a take-nothing judgment against them in a lawsuit arising from the sale of their family farm to appellees James and Kiki Connelly. We affirm the judgment of the trial court.

**BACKGROUND**

The Barkleys farmed land in Hansford County and shared ownership of the 960-acre property with several other family members. The Connellys farm land nearby. Tim

was not interested in selling his farm, but in March of 2017, having filed for bankruptcy and nearing retirement, he met with James to discuss the possibility of James subleasing the property. They also discussed a purchase price of the farm: $2.2 million. The next day, Tim told James that he and Teresa would sell only if they could buy back their residence and the roughly forty-acre pasture across the road.[1] James understood. He told the Barkleys that if he bought the farm, he would let them have their house back. James and Tim drove around the property and talked about the acres Tim wanted to keep. Sometime later, James and the Barkleys discussed the price of $60,000 for the Barkleys' forty-acre pasture. In April of 2017, the Barkleys leased the farm to the Connellys under a cash lease for 2017.

Meanwhile, the parties negotiated a Purchase and Sale Agreement for the Connellys' purchase of the farm. The Barkleys were represented by counsel during the negotiations. Their bankruptcy lawyer was also involved.

In November of 2017, the Barkleys and other owners, as sellers, and the Connellys, as purchasers, signed the Purchase and Sale Agreement.[2] The agreement provided for the conveyance of the entire farm, including the Barkleys' homeplace and nearby forty-acre pasture, to the Connellys. It also included the following provision, hereafter referred to as the "merger clause":

> This Agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understanding or written or oral agreements between the parties respecting the within subject matter. This

---

[1] The tract is an unirrigated corner of a center pivot irrigation section.

[2] The Purchase and Sale Agreement identifies eleven sellers. The Barkleys owned 20% of the property while the other nine family members comprised the remaining 80% ownership.

expressly includes the Offer to Purchase submitted to the Seller on or about April 10, 2017 on the letterhead of Cecil R. Biggers.

One month later, the Connellys closed on 85% of the farm. The Barkleys conveyed an undivided five percent interest in the property via warranty deed, withholding the remainder of their interest until their bankruptcy case was concluded. In November of 2018, the Barkleys' remaining interest was conveyed to the Connellys via warranty deed. However, the Barkleys remained on the property. In March of 2019, they emailed the Connellys and expressed their readiness to buy back the homeplace and pasture for $60,000. The Connellys' lawyer responded via letter, explaining that the parties had no enforceable agreement for the sale[3] and informing the Barkleys that the Connellys, while initially open to the idea of selling the property, now had no intention of doing so due to the Barkleys' recent behavior toward the Connellys. The Barkleys were informed that they had until September 4, 2019, to vacate the property.

On August 9, 2019, the Barkleys, via their lawyer, notified the Connellys that they still desired to repurchase the property. They enclosed a check for $60,000 and surveys of the forty-acre tract and the 7.292-acre homeplace surrounding their residence. The surveys were dated May 17, 2019, and July 5, 2019, respectively. When the Connellys did not accept the funds, the Barkleys filed this lawsuit on August 19, alleging breach of contract, fraudulent inducement, and trespass-to-try-title. The Connellys filed a motion for summary judgment. In May of 2020, the Barkleys amended their petition to add a promissory estoppel claim and the Connellys amended their motion for summary

---

[3] The letter noted that there was no legal description of the property to be conveyed, no agreement on a sales price, and the agreement was not reduced to writing.

judgment. After initially denying the Connellys' motion, the trial court amended its ruling, granting summary judgment on the breach of contract, trespass-to-try-title, and promissory estoppel claims in February of 2022. The case proceeded to trial in April of 2022 on the fraudulent inducement cause of action. The jury found that the Connellys had not induced the Barkleys into entering the Purchase and Sale Agreement through fraud. The trial court entered a final, take-nothing judgment against the Barkleys, disposing of all claims. In this appeal, the Barkleys contend the trial court erred in granting the Connellys' motion for summary judgment.

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment under a de novo standard of review. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2018). In our review, we consider as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A trial court properly grants a traditional motion for summary judgment when the movant has established that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (per curiam).

## ANALYSIS

In three issues, the Barkleys argue that summary judgment was improper because: (1) their breach of contract claim is not barred, (2) the Connellys had no pending summary judgment motion against their equitable trespass-to-try-title action at the time it was

4

dismissed, and (3) promissory estoppel has been recognized as a valid cause of action. Where, as here, the trial court's order granting summary judgment does not state the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the theories advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Breach of Contract

The Connellys assert that the Barkleys' breach of contract claim is barred by the merger doctrine and the statute of frauds. We first consider application of the merger doctrine. Generally, we presume that all prior oral and written agreements merge into a subsequent written contract. *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 899 (Tex. App.—Houston [14th Dist.] 2007, no pet.). For merger to occur, the same parties to an earlier agreement must later enter into a written integrated agreement covering the same subject matter. *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied). A written merger clause is essentially a memorialization of the merger doctrine. *Id.* at 899. When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract. *First Bank v. Brumitt*, 519 S.W.3d 95, 109–110 (Tex. 2017).

Here, the parties' written purchase agreement includes a merger clause in which the parties avowed that the purchase agreement "supersedes any prior understanding or written or oral agreements between the parties respecting the within subject matter." The

5

broad language of the merger clause disclaims any other agreement respecting the subject matter of the agreement. It is clear that the subject matter of the agreement involves the terms of the sale of the Barkleys' farm. Although the Barkleys argue that the oral buyback agreement "was part of the sales agreement," the merger clause expressly provides that the written agreement is "the sole and only agreement" between the parties, indicating that the purchase agreement was intended to be the final, integrated agreement between the parties. Under the purchase agreement, the Connellys have no obligation to convey any property back to the Barkleys. The merger clause precludes the Barkleys from adding to or varying the obligations stated in the purchase agreement. Any understandings or agreements between the Barkleys and the Connellys relating to the sale of the Barkleys' farm prior to the signing of the November 2017 purchase agreement were unequivocally extinguished by the written agreement. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011) (standard merger clause "achieves the purpose of ensuring that the contract at issue invalidates or supersedes any previous agreements"); *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 (Tex. App.—Eastland 2007, pet. denied) (execution of contract with merger clause presumes that all prior negotiations have merged into contract; contract cannot be added to, varied, or contradicted by parol evidence).

However, the parol evidence rule does not preclude enforcement of an agreement that is "collateral" to and not inconsistent with the written agreement. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex. 2010). The Barkleys claim that the buyback agreement is enforceable as an agreement that is collateral to the purchase agreement and that it is not inconsistent with its terms or obligations. *See Hubacek v.*

6

*Ennis State Bank*, 317 S.W.2d 30, 32 (Tex. 1958); *Transit Enters., Inc. v. Addicks Tire & Auto Supply, Inc.*, 725 S.W.2d 459, 461 (Tex. App.—Houston [1st Dist.] 1987, no writ) (parol evidence may be admissible to show collateral, contemporaneous agreements that are consistent with the underlying agreement to be construed). A collateral agreement is one that is supported by separate consideration and that the parties "might naturally" make separately under the circumstances. *Hubacek*, 317 S.W.2d at 33; *see also Boy Scouts of Am. v. Responsive Terminal Sys.*, 790 S.W.2d 738, 745 (Tex. App.—Dallas 1990, writ granted) ("To be collateral, the oral agreement must be such as the parties might naturally make separately and would not ordinarily be expected to embody in the writing; further, the allegedly collateral agreement must not be so clearly connected with the principal transaction as to be part and parcel thereof.").

The Barkleys assert that the understanding that they could buy back a portion of the farm is what convinced them to sell the farm. Thus, the oral promise was not collateral to the written agreement but was rather an integral part of the parties' negotiations. Further, the oral promise was not supported by separate consideration to indicate it was a separate transaction. Consequently, the parol evidence rule bars the enforcement of the allegedly collateral agreement that the Connellys would sell a portion of the farm back to the Barkleys. Because the oral promise is unenforceable, the Barkleys have no basis for their breach of contract claim. *See Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 936 (Tex. App.—Houston [14th Dist.] 1994, no writ) (when plaintiff seeks to recover what he would have gained had promise been performed, gist of action is breach of unenforceable contract and action is barred by statute of frauds).

7

Having determined that the oral promise sought to be enforced by the Barkleys is unenforceable, we need not address the parties' arguments concerning the statute of frauds. The trial court properly granted summary judgment on the breach of contract claim.

Trespass-to-Try-Title

The Barkleys next argue that the trial court erred in granting summary judgment on their trespass-to-try-title claims. A trespass-to-try-title claim is the exclusive remedy by which to resolve competing claims to property. TEX. PROP. CODE ANN. § 22.001(a); *Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021). Such a suit seeks to clear problems in chains of title or to enable an owner with a right to immediate possession of the property to recover possession of land being withheld. *Martin*, 133 S.W.3d at 265–67. Trespass-to-try-title is statutory and has specific pleading requirements. TEX. PROP. CODE ANN. § 22.001. The plaintiff must recover upon the strength of his own title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). To recover on their trespass-to-try-title claim, the Barkleys had the burden to establish (1) a regular chain of conveyances from the sovereign, (2) superior title out of a common source, (3) title by limitations, or (4) prior possession and that the possession had not been abandoned. *See Kilpatrick v. McKenzie*, 230 S.W.3d 207, 213–14 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The Barkleys do not assert that they proved title by any of these four methods. Instead, they rely on their claim that they have equitable title to the property.

A plaintiff in a trespass-to-try-title suit may recover on the strength of an equitable title as well as a legal one. *Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston

[14th Dist.] 2005, pet. denied). Equitable title is the present right to the legal title. *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. Civ. App.—Texarkana 1951, writ ref'd). "Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract. Upon such performance, he becomes vested with an equitable title to the property which is sufficient to allow him to maintain his action in trespass to try title." *White v. Hughs*, 867 S.W.2d 846, 849 (Tex. App.—Texarkana 1993, no writ).

The Barkleys base their claim to title on the existence of the oral buyback agreement discussed above and their tender of $60,000. We have determined that the oral promise is not an enforceable contract. Accordingly, because the Barkleys had no legal or equitable title to the property, the trial court did not err in granting the Connellys' motion for summary judgment on the trespass-to-try-title claim.[4]

Promissory Estoppel

The Connellys sought summary judgment on the Barkleys' promissory estoppel claim on the basis that it is a defensive doctrine, not a cause of action. On appeal, the Barkleys contend that the trial court erred in granting summary judgment because promissory estoppel is a recognized cause of action in this jurisdiction.[5]

---

[4] The Barkleys' claim that summary judgment was improper because their equitable trespass-to-try-title claim was not added to their pleadings until after the Connellys moved for summary judgment. We disagree. In the "Trespass to Try Title" section of their First Amended Petition, the Barkleys asserted that they "have tendered full payment in order to purchase their property" and the Connellys "refused to tender a deed for the purchase." This is a claim of equitable title. *See White*, 867 S.W.2d at 849. The Connellys' motion for summary judgment encompassed this claim.

[5] The Barkleys cite *Texas Private School Foundation, Inc. v. Bullin*, No. 07-20-00225-CV, 2021 Tex. App. LEXIS 10118, at *12–13 (Tex. App.—Amarillo Dec. 22, 2021, pet. denied) (mem. op.), for the proposition that this Court has recognized promissory estoppel as a valid cause of action. We note that the

Even if we recognize promissory estoppel as a basis for affirmative relief, we conclude that the trial court's summary judgment was proper. "Promissory estoppel is an equitable remedy that is unavailable when an express contract covers the dispute's subject matter." *Spicer v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 122 (Tex. App.—Fort Worth 2020, no pet.) (op. on reh'g); *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002) ("[T]he promissory estoppel doctrine presumes no contract exists . . . ."); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (equitable claim will not lie when a "valid, express contract covers the subject matter of the parties' dispute"). It is undisputed that the parties to this lawsuit entered into a written purchase agreement that governed the conveyance of the property at issue. The Connellys provided an analysis of the terms of the purchase agreement and filed relevant portions of it as summary judgment evidence.

A defendant who moves for summary judgment must show the plaintiff cannot recover on the cause of action alleged. *See* TEX. R. CIV. P. 166a(c) (to prevail on motion for summary judgment, movant must demonstrate that no genuine issue of material fact exists and movant is entitled to judgment as a matter of law). No cause of action based upon promissory estoppel can exist in favor of the Barkleys because an express contract governs the subject matter of the promise they seek to enforce. *See Jacaman v. Nationstar Mortg., LLC*, No. 04-17-00048-CV, 2018 Tex. App. LEXIS 1207, at *13 (Tex. App.—San Antonio Feb. 14, 2018, no pet.) (mem. op.) (affirming summary judgment on

---

*Bullin* case was transferred to this Court from the Tenth Court of Appeals, a court which has concluded that promissory estoppel can constitute the basis of a claim for affirmative relief. *See Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.). In cases transferred from other courts, we apply the transferor court's caselaw. TEX. R. APP. P. 41.3.

10

promissory estoppel claim where promissory estoppel not applicable because alleged promise was covered by valid contract between the parties); *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 457 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (merger clause stating that contract contained entire agreement of parties foreclosed promissory estoppel claim based on alleged oral promises made before execution of contract); *see also El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied). Therefore, we conclude that the Connellys met their burden of proving they were entitled to summary judgment on the Barkleys' promissory estoppel claim as a matter of law.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Judy C. Parker
Justice

11