

**NUMBER 13-07-175-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**JENNIFER YARTO AND**
**DTRJ INVESTMENTS, L.P.,**                                    **Appellants,**

**v.**

**TODD GILLILAND, AND**
**SOFIA GILLILAND,**                                          **Appellees.**

---

**On appeal from the 398th District Court of Hidalgo County, Texas.**

---

## O P I N I O N

**Before Justices Yañez, Rodriguez, and Benavides**
**Opinion by Justice Yañez**

This is an accelerated interlocutory appeal brought by Jennifer Yarto and DTRJ

Investments, L.P. (collectively "Yarto"). Yarto appeals a district court's temporary injunction

that enjoins her from proceeding with a forcible detainer action to recover a residence

occupied by Todd Gilliland and Sofia Gilliland (collectively "the Gillilands"). Yarto contends

through three issues on appeal that the trial court erred in issuing the temporary injunction.

We affirm.

## I. Background

In June 2003, Todd built a home in Mission, Texas ("the residence"). Since that

time, the Gillilands have maintained possession of the residence, despite conveying it to

Yarto through a warranty deed on August 27, 2003. According to Todd, he and Yarto were

business partners before and after the conveyance. The business partnership revolved

around the building and selling of residential property. Todd would traditionally oversee

the construction of a home and, at times, live in the home until it was sold. Todd contends

that he intended to live in the residence long-term, and that he only conveyed the

residence to Yarto so they could use the equity from the residence to invest in a new

construction project. Todd alleges that when the residence was conveyed to Yarto, they

entered into an oral contract for deed. An attorney was directed to construct a written

contract for deed, but no written contract was ever given to the Gillilands. The Gillilands

claim that they have equitable title to the home based on the oral contract for deed

because the deed has been fully satisfied by payment or offset. They further claim their

oral contract for deed is enforceable because they (1) have made payment of

consideration to Yarto, (2) have made valuable improvements to the residence, and (3)

have maintained continuous possession of the residence since June 2003.[1]

Yarto maintains that no oral or written contract for deed exists. Rather, Yarto

---

[1] *See generally Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921) (stating the conditions that must exist "to relieve a parole sale of land from the operation of the Statute of Frauds").

asserts that the residence was orally leased to the Gillilands after it was conveyed, and the Gillilands have defaulted on that lease. After the Gillilands failed to satisfy Yarto's written demands to vacate the residence, Yarto filed a forcible detainer action in a justice court. Prior to the justice court taking any action, the Gillilands filed suit against Yarto in district court, arguing various causes of action relating to the residence[2] and asking the court to find that they have title to the residence. Prior to their cause of action being tried on the merits, the Gillilands requested a temporary injunction from the trial court, seeking to have Yarto enjoined from following through with her suit in the justice court. After a hearing, the trial court granted the Gillilands a temporary injunction, enjoining Yarto from (1) "initiat[ing] any further forcible entry and detainer actions applicable to [the residence]," (2) "attempt[ing] to prosecute any forcible entry and detainer actions applicable to [the residence]," and (3) "attempt[ing] to enforce any order issued by any forcible entry and detainer actions applicable to [the residence]."[3] This interlocutory appeal then ensued.

---

[2] These causes of action include breach of oral contract, constructive trust, fraud and misrepresentation, wrongful eviction, gross negligence, and trespass to try title.

[3] A *forcible entry and detainer* cause of action is governed by section 24.001 of the Texas Property Code, TEX. PROP. CODE ANN. § 24.001 (Vernon 2000), while a *forcible detainer* cause of action is governed by section 24.002. *Id.* § 24.002 (Vernon 2000). These causes of action impose different procedural requirements prior to filing suit, *see id.* § 24.005 (Vernon 2000), as well as different evidentiary burdens on those bringing suit. Under a forcible entry and detainer suit, the plaintiff must show that the defendant "entered the real property of another without legal authority or by force," *id.* § 24.001, while no such showing is required in a forcible detainer suit. *See id.* § 24.002. Though the term "forcible entry and detainer" is often used to describe both an action for forcible entry and detainer *and* an action for forcible detainer, such a practice is incorrect. *See Geldard v. Watson*, 214 S.W.3d 202, 205 n.1 (Tex. App.–Texarkana 2007, no pet.); *see also Team Bank v. Higginbotham*, No. 05-92-02220-CV, 1993 WL 343385, at *1 n.1 (Tex. App.–Dallas Sept. 10, 1993, no pet.) (mem. op.). Section 24.004 of the property code states that justice courts have jurisdiction over eviction suits, and that "[e]viction suits include forcible entry and detainer *and* forcible detainer suits." TEX. PROP. CODE ANN. § 24.004 (Vernon 2000) (emphasis added). The fact that the Legislature found it necessary to reference both types of suits is an indication that the term "forcible entry and detainer" does not subsume forcible detainer suits.

In the instant case, the trial court's temporary injunction prohibits Yarto from pursuing a "forcible entry and detainer" suit in the justice court, rather than a *forcible detainer* suit. At the hearing on the temporary injunction, however, the parties made a joint stipulation of facts, stating that unless the trial court grants the

## II. Standard of Review

A temporary injunction will not be granted where there is a plain and adequate remedy at law.[4] To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.[5] Whether to grant or deny a temporary injunction is within the trial court's sound discretion.[6] A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion.[7] The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion.[8]

---

Gillilands a temporary injunction, Yarto "will continue to prosecute a *forcible detainer* action seeking possession of the home." (Emphasis added). Moreover, Yarto's contention that she entered into a landlord-tenant relationship with the Gillilands after the residence was conveyed demonstrates the improbability of Yarto bringing a forcible entry and detainer suit, given that the success of such a suit would turn on showing that the Gillilands entered the residence without legal authority or by force. Accordingly, the record reflects no attempt or intent by Yarto to bring a forcible entry and detainer suit against the Gillilands, leaving this Court to contemplate whether the temporary injunction should be dissolved given that injunctive relief requires demonstrable intent to commit the act for which injunctive relief is sought. *See Frey v. De Cordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983). We decline to go down this road, however, because (1) neither party has raised this matter on appeal and (2) the injunction, despite stating "forcible entry and detainer" rather than "forcible detainer," sufficiently informs Yarto that she should not proceed with her forcible detainer suit, without calling on her to make an inference or conclusion *about which persons might differ*, *see San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956). Nevertheless, we call attention to this concern in the hope of preventing any future misunderstandings.

[4] *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984).

[5] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

[6] *Id.*

[7] *Id.*

[8] *Id.* Yarto argues that the traditional prerequisites for obtaining a temporary injunction, set out above, were not satisfied by the Gillilands. The Gillilands, on the other hand, argue that they satisfied the prerequisites specifically applicable to anti-suit injunctions. *See generally Gonzales v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005) (discussing what party seeking anti-suit injunction must show to obtain relief). The majority rule in Texas is that in addition to meeting the requirements necessary to obtain an anti-suit injunction, the traditional prerequisites to injunctive relief must be met by a party seeking an anti-suit

## III.

We begin with Yarto's second issue, wherein she argues that the trial court abused its discretion in granting the temporary injunction because the Gillilands had an adequate remedy at law. Yarto's argument is premised on the contention that "[t]he Gillilands have the ability to defend their right to possession in the justice of the peace court." In *Ward v. Malone*, this Court addressed the law applicable to forcible detainer actions in great detail, addressing under what circumstances a justice court or district court possessed jurisdiction to determine a party's right of possession:

> The forcible detainer action is the procedure by which the right to immediate possession of real property is determined. It is a special proceeding governed by particular statutes and rules. It was created to provide a speedy, simple and inexpensive means for resolving the question of the right to possession of real property. To preserve the simplicity and speedy nature of the remedy, the applicable rule of civil procedure provides that the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated. Thus, the sole issue in a forcible

---

injunction. *See, e.g., Bay Fin. Sav. Bank v. Brown*, 142 S.W.3d 586, 591 (Tex. App.–Texarkana 2004, no pet.) (holding that anti-suit injunctions must also comply with requirements provided in rules of civil procedure); *Total Minatome Corp. v. Santa Fe Materials, Inc.*, 851 S.W.2d 336, 339 (Tex. App.–Dallas 1993, no writ) (holding that "clear equity" justifying injunctive relief requires showing of irreparable injury, inadequate remedy at law, and probable right of recovery). *But see, e.g., In re Henry*, Nos. 01-07-00601-CV & 01-07-00622-CV, 2008 Tex. App. LEXIS 7334, at *4 (Tex. App.–Houston [1st Dist.] Oct. 2, 2008, no pet.) (op. on reh'g) (negating contention that a party seeking an anti-suit injunction is also required to establish a probable right of recovery in the underlying lawsuit, irreparable harm, and that no adequate remedy at law exists); *Admiral Ins. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 848 S.W.2d 251, 258 (Tex. App.–Fort Worth 1993, writ denied), *overruled on other grounds, Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (rejecting contention that a person seeking an anti-suit injunction must establish a probable right to recovery on the merits).

The conflict and confusion over this matter is reflected in the opinions of this Court. *See, e.g., Fleming v. Ahumada*, 193 S.W.3d 704, 713-15 (Tex. App.–Corpus Christi 2006, no pet.) (assessing whether trial court erred in granting anti-suit injunction by only evaluating the requirements specifically applicable to the acquisition of an anti-suit injunction). *But see, e.g., Marroquin v. D & N Funding, Inc.*, 943 S.W.2d 112, 114 (Tex. App.–Corpus Christi 1997, no pet.) (assessing whether a trial court erred in denying request for an anti-suit injunction by only assessing whether party had pleaded and proven a probable injury if relief was denied, and a probable right to recovery). Whether or not a party seeking an anti-suit injunction must meet the traditional prerequisites for injunctive relief is a matter we need not firmly resolve today. We shall assume *arguendo*, as implied by Yarto's brief, that the traditional prerequisites are applicable to the Gillilands' anti-suit injunction.

5

detainer action is who has the right to immediate possession of the premises.

To prevail in a forcible detainer action, a plaintiff is not required to prove title but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. However, where the right to immediate possession necessarily requires resolution of a title dispute, the justice court has no jurisdiction to enter a judgment and may be enjoined from doing so. Because a forcible detainer action is not exclusive, but is cumulative of any other remedy a party may have in the courts of this state, the displaced party is entitled to bring a separate suit in the district court to determine the issue of title.

In most situations, the parties in a forcible detainer suit are in a landlord-tenant relationship. *One indication that a justice court, and county court on appeal, is called on to adjudicate title to real estate in a forcible detainer case—and, thus exceed its jurisdiction—is when a landlord-tenant relationship is lacking.*[9]

In the instant case, the parties dispute whether a landlord-tenant or buyer-seller relationship exists. The Gillilands assert that they entered into an oral contract for deed with Yarto for the residence and that they fully performed on the contract by paying the purchase price.[10] They do not contend that Yarto has provided them with the actual title to the residence. Under these facts, the Gillilands have raised a claim of equitable title to the residence,[11] which, if supported by evidence and law, would provide them with a

---

[9] 115 S.W.3d 267, 270 (Tex. App.–Corpus Christi 2003, pet. denied) (citations and internal quotations omitted; emphasis added).

[10] "An executory contract for the sale of real estate contemplates that the purchaser complete performance in the future (i.e., finish making payments) before title to the property passes." 17 William V. Dorsaneo III, TEXAS LITIGATION GUIDE § 252.01[3][a] (2006). A "contract for deed" is a type of executory contract, in which "[t]he seller is required to convey a deed to the property once the purchaser has performed the executory contract by paying the full agreed purchase price." *Id.*

[11] Although legal title does not pass under a contract for deed until the deed is actually delivered to the purchaser, *Graves v. Diehl*, 958 S.W.2d 468, 471 (Tex. App.–Houston [14th Dist.] 1997, no pet.), the purchaser can acquire equitable title by merely paying the purchase price and fully satisfying his obligations under the contract. *White v. Hughs*, 867 S.W.2d 846, 849 (Tex. App.–Texarkana 1993, no writ). "Upon payment of the purchase price and full performance of a contract for sale of real property, a party becomes vested with an equitable title in the land sufficient to enable him to maintain an action for trespass to try title." *Brown v. Davila*, 807 S.W.2d 12, 14 (Tex. App.–Corpus Christi 1991, no writ).

6

superior right of possession despite Yarto's retained legal title.[12]  Accordingly, we do not believe that the justice court can rely on Yarto's warranty deed alone to determine which party has the right to immediate possession.  We find that the Gillilands' and Yarto's competing assertions over the nature of their relationship—with neither party's assertion having the support of a contractual document (i.e., a written lease or written contract for deed)—requires the resolution of a title dispute before the right of immediate possession can be fully ascertained.[13]  As a consequence, we further find that the justice court does not have jurisdiction to address whether Yarto or the Gillilands have a right of immediate possession to the residence.

Though Yarto seeks to deter this Court from reaching the above finding by citing various cases, we conclude that Yarto's case law is inapplicable to the instant case.[14] There are, however, two cases cited and discussed by Yarto—*Fandey v. Lee* and *Falcon*

---

[12] *See Hearst's Heirs v. Kuykendall's Heirs*, 16 Tex. 327, 329 (1856); *Guyer v. Rose*, 601 S.W.2d 205, 207 (Tex. Civ. App.–Dallas 1980, writ ref'd n.r.e.).

[13] *See, e.g., Dass, Inc., v. Smith*, 206 S.W.3d 197, 200-01 (Tex. App.–Dallas 2006, no pet.) (finding that the determination of the right to immediate possession of property necessarily required the resolution of a title dispute when the parties argued over whether a landlord-tenant or buyer-seller relationship existed). We observe that the facts of our case are distinguishable from those in *Tipton v. Ramirez*, No. 04-07-00231-CV, 2007 Tex. App. LEXIS 9228, at *6-8 (Tex. App.–San Antonio Nov. 28, 2007, no pet.) (mem. op.). In *Tipton*, the court of appeals found—despite the fact that the parties argued over whether a landlord-tenant or buyer-seller relationship existed between them—that the justice court could determine the right to immediate possession because there was a written lease agreement between the parties that post-dated the written purchase agreement. *Id.* There is no written lease agreement in the instant case.

[14] Yarto's reliance on *McGlothlin* is misplaced because the party being evicted in that case admitted that title was not at issue. 672 S.W.2d at 232. With regard to *Marroquin v. D & N Funding, Inc.*, this Court found that Marroquin, who had declared bankruptcy, was not entitled to injunctive relief to keep D & N from evicting him because bankruptcy law gave him an adequate remedy at law. 943 S.W.2d 112, 114-15 (Tex. App.–Corpus Christi 1997, no pet.). Lastly, we find that *Haith v. Drake* is irrelevant because it was clear in that case that the party being evicted had not completed his obligations under the contract for deed, thus only giving the party equitable rights, not equitable title. 596 S.W.2d 194, 197 (Tex. Civ. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.).

*v. Ensignia*—that warrant detailed attention.[15]

According to Yarto, *Fandey* demonstrates that the justice court has jurisdiction to determine whether she or the Gillilands have the right to the immediate possession of the residence. In *Fandey*, the Fandeys and the Lees were fighting for possession of a home.[16] It was undisputed that the Fandeys were the owners and title holders of a home possessed by the Lees.[17] Prior to taking possession of the home, the Lees gave the Fandeys a large sum of money.[18] The Fandeys alleged that the sum in question served as a security deposit for the rental of the home, while the Lees urged that the sum was part of the purchase price of the property.[19] After the Fandeys initiated and prevailed in a forcible detainer action in a justice court, the Lees appealed to a county court, at which time the Lees counterclaimed and raised affirmative defenses against the Fandeys' forcible detainer action.[20] The most relevant of these defenses was the Lees' claim that they and the Fandeys had entered into an oral contract to sell the home, and that the Lees had subsequently obtained possession and made valuable improvements to the home.[21] At trial, a jury found that no landlord-tenant relationship existed between the parties, resulting

---

[15] *Fandey v. Lee*, 880 S.W.2d 164 (Tex. App.–El Paso 1994, writ denied) (op. on reh'g), and *Falcon v. Ensignia*, 976 S.W.2d 336 (Tex. App.–Corpus Christi 1998, no pet.), are both discussed by Yarto in her first issue on appeal, not the second. Because we believe, however, that discussion of these cases is more applicable to her second issue, we address them at this time.

[16] 880 S.W.2d at 167.

[17] *Id.*

[18] *Id.* at 166-67.

[19] *Id.* at 167.

[20] *Id.*

[21] *Id.* at 169.

8

in the entry of a judgment that the Fandeys take nothing.[22]  The Fandeys appealed, and the El Paso Court of Appeals reversed and remanded, stating in the process that though "the Lees' affirmative defense allegations would have relevancy to their counterclaims to quiet title and for fraud, among other things, . . . *they have no such relevancy to the question of which party had the right to immediate possession of the premises*."[23]  In latching onto this language, Yarto fails to recognize that *Fandey* is factually distinguishable from the instant case in one critical respect.

Though not explicitly stated in *Fandey*, we believe the court's determination—that the Lees' alleged oral contract for deed had no relevance to the "question of which party had the right to immediate possession of the premises"—rested on the undisputed fact that the Lees had not fully satisfied their obligations under the alleged contract.[24]  By not fully satisfying their obligations under the contract, the Lees failed to establish that they had equitable title to the home.[25]  Instead, the Lees merely established that they had an equitable right to complete performance under the contract,[26] which is not a right that would have provided the Lees with a superior right of possession to the home.  Accordingly, the instant case is distinguishable from *Fandey* because the Gillilands assert that they have

---

[22] *Id.* at 167.

[23] *Id.* at 169.

[24] *See id.* at 166 (stating that the Lees "urge that the sum [of money given to the Fandeys] was part of the purchase price of the property," and that it "is undisputed at all times material to this appeal" that the "Lees made no further payments for the property" since taking possession).

[25] *See Haith*, 596 S.W.2d at 197; *White*, 867 S.W.2d at 849.

[26] *See generally In re Waldron*, 65 B.R. 169, 173-74 (Bankr. N.D. Tex. 1986) (discussing Texas case law and explaining the distinction between the right that accrues for a purchaser entering into a contract for deed (i.e., an equitable right), and the right that accrues after the purchaser has satisfied his or her obligations under a contract for deed (i.e., an equitable title)).

fully performed all obligations under their alleged oral contract for deed.[27]

Relying on this Court's opinion in *Falcon v. Ensignia*,[28] Yarto also maintains that the Gillilands failed to bring the justice court's jurisdiction into question because they presented no specific evidence of a title dispute. In *Falcon*, Ensignia purchased a motel from Hernandez and subsequently brought a forcible entry and detainer action against the Falcons in a justice court.[29] The Falcons, who had been managing and residing in the motel for some time, refused to vacate upon Ensignia's request.[30] The Falcons filed a written answer in the justice court, wherein they alleged that they had entered into an oral contract for the purchase of the property from Hernandez prior to Ensignia's purchase of the property.[31] The Falcons never produced any writing evidencing this conveyance.[32] Ensignia, on the other hand, filed a copy of the warranty deed and vendor's lien evidencing his purchase and ownership of the property.[33] The justice court rendered judgment in favor of Ensignia, and the Falcons appealed to a county court for a trial de novo.[34] After Ensignia moved for summary judgment, and the Falcons failed to file a response, the

---

[27] We observe that when the parties in a buyer-seller relationship dispute whether the buyer has fully performed as required under a contract for deed, the justice court is denied jurisdiction to ascertain which party has the right of immediate possession to the property in question. *See Rodriguez v. Sullivan*, 484 S.W.2d 592, 593 (Tex. App.–El Paso 1972, no pet.).

[28] 976 S.W.2d 336.

[29] *Id.* at 337.

[30] *Id.*

[31] *Id.* at 337-38.

[32] *Id.* at 338.

[33] *Id.*

[34] *Id.*

10

county court granted summary judgment in favor of Ensignia.[35] The Falcons then appealed

to this Court, arguing that the lower courts were without jurisdiction to determine title.[36] We

rejected the argument, stating:

> We do not believe a genuine title dispute was ever raised in either court. Falcon referred to an oral agreement between him and Gonzalez [sic], but such agreement is unenforceable as a matter of law. *Specific evidence of title dispute is required to raise an issue of a justice court's jurisdiction.* Without the Falcons having presented specific evidence to raise a genuine title dispute, the jurisdiction of the court was never at issue.[37]

This Court's demand for *specific evidence* of a title dispute rested on *Sparkman v.*

*State*, wherein the Tyler Court of Appeals—citing the Houston First Court of Appeals'

opinion in *Mitchell v. Armstrong Capital Corporation* as its example—observed that "courts

have required specific evidence of a title dispute before determining that a title dispute

deprived a justice court of jurisdiction in an action for forcible entry and detainer."[38] But

what specific evidence did the *Mitchell* court really require?

In *Mitchell*, Armstrong Capital first prevailed on a forcible detainer action against

Mitchell in a justice court, and then later in a county court.[39] Mitchell appealed, arguing that

the county court did not have subject-matter jurisdiction over the case.[40] In addressing the

argument, the court of appeals stated that "[i]f it becomes apparent that a genuine issue

---

[35] *Id.*

[36] *Id.* at 337.

[37] *Id.* at 338 (emphasis added) (citing *Sparkman v. State*, 968 S.W.2d 373, 378 (Tex. App.–Tyler 1997, pet. ref'd)).

[38] *Sparkman*, 968 S.W.2d at 378 (citing *Mitchell v. Armstrong Capital Corp.*, 911 S.W.2d 169, 171 (Tex. App.–Houston [1st Dist.] 1995, writ denied)).

[39] 911 S.W.2d at 171.

[40] *Id.*

regarding title exists in a forcible detainer suit, the [justice or county] court does not have jurisdiction over the matter."[41]  The court then ruled in Mitchell's favor, stating:

> Appellant Mitchell raised title as an issue in the justice court and county court at law by *asserting* that the Substitute Trustee's Deed held by Armstrong Capital was void, and by specifically giving notice that litigation was pending in the 268th District Court to set aside the non-judicial foreclosure sale.  Because a "title issue" was involved in the courts below, they had no subject matter jurisdiction over the case.[42]

The opinion does not reference any evidence Mitchell presented to support her claim that Armstrong Capital's deed was void; rather, the opinion merely establishes that Mitchell was able to raise a title dispute through her assertions and notice of pending litigation.

We interpret "specific evidence" as consisting of nothing more than the various assertions that comprise a party's title claim, and conclude that "specific evidence" of a title dispute exists when through those assertions, the party has asserted a basis for title ownership that is not patently ineffective under the law and is intertwined with the issue of immediate possession.[43]  Applying this interpretation to *Falcon* and the case at hand, it becomes evident that the two cases are distinguishable.

---

[41] *Id.*

[42] *Id.* (emphasis added).

[43] The Waco Court of Appeals in *Aguilar v. Weber*, for example, cited *Mitchell* and *Falcon* when stating the following:

> [W]e find specific evidence of a title dispute raised in the Aguilar's [sic] counter-claim.  The counter-claim disputed the alleged default and challenged the right to possession under the contract.  The Aguilars asserted that non-payment was due to the Webers['] failure to execute the warranty deed as required under the contract.  Therefore, determining the right of possession necessarily involved a title inquiry into the contract to purchase land, unless the contract created a landlord-tenant relationship or other independent basis for determining possession upon default.

72 S.W.3d 729, 734-35 (Tex. App.–Waco 2002, no pet.).  Accordingly, the *Aguilar* court, like the *Mitchell* court, found "specific evidence" of a title dispute based on the party's assertions, rather than on evidence to support those assertions.

*Falcon* does not refer to any assertion by the Falcons that their oral agreement was enforceable as a matter of law because the agreement satisfied an exception to the statute of frauds. The Falcons presumably did not make such an assertion; and as a result, they failed to claim a basis for title ownership that was not patently ineffective under the law. For even if the justice or county court believed that the Falcons had entered into an oral contract for deed, the Falcons provided no claim that would give a court cause to believe that the agreement was enforceable in light of its failure to comply with the statute of frauds. The Gillilands' asserted basis for their ownership of the residence, unlike that in *Falcon*, is their claim that they (1) entered into a contract for deed with Yarto; (2) fully satisfied their obligations under this contract; and (3) have done all that is necessary under the Texas Supreme Court's holding in *Hooks v. Bridgewater*[44] to relieve their oral contract from the operation of the statute of frauds. The Gillilands formally evidenced their claim at the temporary injunction hearing through a joint stipulation of facts and Todd's testimony. And for reasons that will be more fully expressed when we reach Yarto's remaining issues on appeal, we do not believe Yarto has effectively argued that the Gillilands' claim is patently ineffective in establishing their right of ownership. In light of all this, we find that the Gillilands' claim, coupled with the Gillilands' pending litigation in the district court, raises a title dispute that removes the justice court's subject-matter jurisdiction over the case.[45]

Yarto's second issue on appeal is overruled.

---

[44] 229 S.W. at 1116.

[45] *See Mitchell*, 911 S.W.2d at 171.

## IV. Probable Right to the Relief Sought

We interpret Yarto's first issue as asserting that the trial court erred in granting injunctive relief because the Gillilands failed to establish a probable right to the relief sought. To establish a probable right to recover, a party is not required to prove that it will prevail on final trial in order to invoke the trial court's discretion to grant a temporary injunction.[46] A probable right of success on the merits is shown by alleging a cause of action and introducing evidence that tends to sustain it.[47] We will affirm the trial court's decision as long as there are grounds to believe that the claim has merit.[48]

Yarto first argues that the Gillilands' ownership claim over the residence is ineffective because they cannot prove all that is required under *Hooks*. In *Hooks*, the Texas Supreme Court held "that to relieve a parol sale of land from the operation of the Statute of Frauds, three things were necessary": (1) "[p]ayment of the consideration"; (2) "[p]ossession by the vendee"; and (3) "[t]he making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor."[49] Yarto contends that the Gillilands cannot satisfy the "possession" element, stating:

> It is undisputed that [the Gillilands] have lived in and maintained possession of the subject property from the time it was built in June 2003, through the present date. [The Gillilands] continued to occupy and possess the subject property after Todd Gilliland executed a Warranty Deed,

---

[46] *Oil Field Haulers Ass'n v. R.R. Comm'n*, 381 S.W.2d 183, 196 (Tex. 1964).

[47] *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 23-24 (Tex. App.–Houston [1st Dist.] 1998, pet. dism'd).

[48] *183/620 Group Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.–Austin 1989, writ dism'd w.o.j.) (stating that, in order to satisfy the "probable right to recover" requirement, an applicant seeking injunctive relief is only required to (1) adduce evidence that tends to support his right to recover on the merits, or (2) show that a bona fide issue exists as to his right to ultimate relief).

[49] 229 S.W. at 1116.

14

conveying the subject property to Yarto on August 27, 2003, and they were in possession of the subject property when they allegedly entered into an oral contract for deed. Because they were already in possession of the property when the alleged contract for deed was made, [the Gillilands] cannot show that such possession was intended as a delivery under an oral contract for deed, and therefore, cannot fall within the *Hooks* exception to the statute of frauds.[50]

Yarto derives this argument from the Amarillo Court of Appeals' discussion of *Hooks* in *Teague v. Roper*.[51] In *Teague*, the court noted that the *Hooks* court "did not address the question of whether a plaintiff who was already in possession and who continued in possession under a new oral agreement within the statute [of frauds] had such possession as would remove the agreement from the operation of the statute."[52] The *Teague* court addressed this question and concluded that "if the grantee is already in possession when the contract is made, a continuance of possession will not ordinarily suffice, although under the circumstances of a particular case, a continuance of possession may be such as to be referable exclusively to a new oral contract."[53] Accordingly, *Teague* indicates that it is possible for the Gillilands to satisfy the possession element in *Hooks* if they can make their post-conveyance possession of the residence *referable exclusively* to their alleged oral contract for deed.

Both Yarto and the Gillilands clearly rely on Yarto's warranty deed, which was presented to the trial court, to assert that the Gillilands entered into some type of oral agreement after the residence was conveyed. The only dispute between the parties is the

---

[50] YARTO'S BRIEF at 6-7 (citations omitted).

[51] 526 S.W.2d 291, 293-95 (Tex. App.–Amarillo 1975, writ ref'd n.r.e.).

[52] *Id.* at 293.

[53] *Id.*

15

nature of the agreement. Todd testified that after the conveyance, he provided Yarto with a number of monthly check payments on which he wrote, "contract for deed." The Gillilands also asserted that an attorney, David Girault, had been assigned by both parties to draw up a contract for deed, but Girault failed to complete the assignment. If the Gillilands were to present the checks, Girault's testimony, and any additional evidence to a fact-finder during a trial on the merits, it is not inconceivable for the fact-finder to conclude that the Gillilands have demonstrated that their post-conveyance possession of the residence is referable exclusively to an oral contract for deed.[54]

The Gillilands, however, did not produce the checks in question, nor did they present any additional evidence relating to Girault and his alleged involvement in drafting the proposed contract for deed. Nevertheless, we do not believe that the Gillilands' failure to present this evidence denied the trial court the discretion to grant injunctive relief. Todd's testimony, by itself, tended to support the Gillilands' right to recover on the merits; as a result, the Gillilands effectively invoked the trial court's discretion to grant the temporary injunction.[55] We thus reject Yarto's first argument.

The Texas Supreme Court has stated that a court cannot find specific performance "when there is confusion and indefiniteness as to the terms" of an oral contract for deed.[56] Accordingly, Yarto raises a compelling second argument by asserting that the Gillilands did

---

[54] *See, e.g., Arredondo v. Mora*, 340 S.W.2d 322, 324 (Tex. Civ. App.–El Paso 1960, writ ref'd n.r.e.) (noting that the trial court—upon having to determine whether plaintiff satisfied *Hooks* exception—could have looked at descriptions on payment documentation to assess the validity of plaintiff's contention that his payments to defendant were pursuant to an oral contract for deed, rather than a contract for lease).

[55] *See T-N-T Motorsports, Inc.*, 965 S.W.2d at 23-24.

[56] *Francis v. Thomas*, 129 Tex. 579, 106 S.W.2d 257, 258 (1937).

not establish a probable right to relief because their alleged oral contract for deed is too indefinite. Yarto specifically argues the following:

> As evidenced by the record, the obligations under the alleged oral contract for deed were anything but certain. Todd Gilliland was unable to state any of the terms under this oral contract for deed, including the sale price, the interest rate, or who was responsible for the payment of ad valorem taxes. Because the obligations are uncertain, it is impossible for the Gillilands to fulfill the obligations under the alleged oral contract for deed in order to acquire equitable title.[57]

Though the record clearly shows that Todd exhibited difficulty in recalling the Gillilands' obligations under the alleged oral contract for deed, we do not believe this denied the trial court its discretion to grant injunctive relief. First, we remain mindful of the fact that the trial court was evaluating Todd's testimony on the basis of whether it established a *probable* right to recovery, not whether his testimony established that the Gillilands would prevail on the merits of their claim.[58] Second, the Texas Supreme Court has stated that when dealing with oral contracts, it is the "*essential terms* [that] must be free and clear from doubt" for the contract to be enforceable.[59] In the instant case, the trial court could have deemed many of the contract details that Todd could not provide as being non-essential, and thus irrelevant to the alleged oral contract's enforceability. The trial court could have also concluded that Todd provided a sufficient number of essential details. Todd testified, for instance, that (1) the property at issue in the oral contract for deed was the residence; (2) he had to pay "about $325,000" to Yarto for the purchase of the residence; (3) "it was a 30-year contract"; (4) there was an 8.5% interest rate; and (5)

---

[57] YARTO'S BRIEF at 9 (citations omitted).

[58] *See Oil Field Haulers Ass'n*, 381 S.W.2d at 196.

[59] *Smith v. Griffin*, 131 Tex. 509, 116 S.W.2d 1064, 1066 (1938) (emphasis added).

he had to make monthly payments on the contract in the amount of $2,500. Moreover, the trial court, upon hearing Todd's testimony, could have believed that additional details relating to the alleged oral contract for deed would be discovered during a trial on the merits, at which time evidence and testimony from Todd and Sofia Gilliland, Girault, or some other source could all be presented.[60]

We thus find that the trial court did not abuse its discretion because it had grounds to believe that the Gillilands' claim had merit.[61] Having now rejected all of the arguments contained within Yarto's first issue, that issue is overruled.

## V.

In her third and final issue, Yarto argues that the trial court erred in granting the temporary injunction because the Gillilands presented no evidence of probable injury. We disagree.

The parties' joint stipulation of facts states that "[u]nless the [trial] court enters the temporary injunction requested by [the Gillilands], [Yarto] will continue to prosecute a forcible detainer action seeking possession of the home" in which the Gillilands currently reside. Because, "[i]n Texas, the potential loss of rights in real property is a probable,

---

[60] In *Southwest Weather Research, Inc. v. Jones*, the supreme court stated that a "hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits." 160 Tex. 104, 111, 327 S.W.2d 417, 422-23 (1959). The importance of allowing the case at hand to proceed to trial is bolstered by the fact that, in recent years, courts have forced and upheld the transfer of property title pursuant to a contested oral contract for deed. *See, e.g., Ratsavong v. Menevilay*, 176 S.W.3d 661 (Tex. App.–El Paso 2005, pet. denied) (affirming trial court's decision to give Menevilay title to a home based on an alleged oral contract for deed, even though Ratsavong, the alleged seller and pretrial title holder, argued that only a landlord-tenant relationship existed and denied ever entering an oral contract for deed).

[61] *See 183/ 620 Group Joint Venture*, 765 S.W.2d at 904.

imminent, and irreparable injury that qualifies a party for a temporary injunction,"[62] the trial court could have reasonably concluded from the stipulation that a probable injury would befall the Gillilands if no injunctive relief was granted.  Finding no abuse of discretion in this regard, we overrule Yarto's final issue on appeal.

**VI.**

The trial court's order granting the temporary injunction is affirmed.

LINDA REYNA YAÑEZ,
Justice

Opinion delivered and filed this the
8th day of January, 2009.

---

[62] *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.–Tyler 2007, no pet.); *see Franklin Savs. Ass'n v. Reese*, 756 S.W.2d 14, 15-16 (Tex. App.–Austin 1988, no writ) (op. on reh'g) ("Since it is obvious that appellee would probably be injured if the property were foreclosed and sold, the only question here is whether the trial court erred in determining there was a probable right of recovery."); *Hayter v. Fern Lake Fishing Club*, 318 S.W.2d 912, 914 (Tex. Civ. App.–Beaumont 1958, no writ) (finding that actions affecting one's use and enjoyment of his home is an irreparable injury); *see also Positive Feed, Inc. v. Wendt*, Nos. 01-96-00614-CV & 01-96-01250-CV, 1998 Tex. App. LEXIS 774, *30 (Tex. App.–Houston [1st Dist.] Feb. 5, 1998, pet. denied) (mem. op.) ("We hold that loss of enjoyment or the reasonable use of one's home can be an irreparable injury for purposes of injunctive relief.").