NUMBER 13-11-00062-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



IN THE ESTATE OF RALPH LEE MINTON,
DECEASED

 

 



On appeal from the Probate Court

of Hidalgo County, Texas.

 

 



MEMORANDUM OPINION

 

Before Chief Justice Valdez and
Justices Rodriguez and Benavides

Memorandum Opinion by Chief Justice
Valdez

 

Appellant, Artemio Garza (“Garza”), complains about a temporary
restraining order in favor of appellees, Randall Lee Minton, Glenda Marcelle
Todd, Beverly Regina Alford, and Wanda Lynn Smith, the children of the
deceased, Ralph Lee Minton (collectively referred to as the “children”).  By two
issues, Garza contends that the trial court erred in granting the children’s
motion for a temporary injunction because the children failed to show a
probable right to recovery and that the children had a probable, imminent, and
irreparable Injury.  We affirm.

I.          Background

On December 2, 2010, Minton died intestate survived by his four children. 
Before his death, Minton had designated Garza as the beneficiary of his payable
on death (“POD”) accounts at First National Bank.  The children discovered that
Garza was the beneficiary of these accounts and that he would receive
approximately $400,000.  On December 17, 2010, the children filed a petition
requesting injunctive relief seeking to prevent Garza from using the $300,000
he had already received from Minton’s accounts.  On December 21, 2010, the
trial court held a hearing on the children’s petition for injunctive relief. 
At the hearing, the trial court heard testimony from Alford, Garza, Randall, and
others.

Alford testified that she visited Minton in 2008 and stayed for
approximately ten days.  Alford claimed that during her visit, Minton exhibited
bizarre behavior because Minton propositioned her to have sexual relations with
him.  According to Alford, Minton was still able to walk with assistance during
Alford’s 2008 visit.

Alford testified that Minton’s health deteriorated in 2010, and he was
hospitalized five times.  Alford stated that she received numerous calls from
the hospital about Minton’s bizarre behavior.  Alford testified that, she
communicated with the hospital staff concerning how to provide care for Minton
because he refused to talk to the staff himself.  Alford stated that John
Tisdale, Minton’s friend for over thirty years, assisted with caring for Minton
until his death.  Alford testified that Tisdale checked Minton into several
nursing homes throughout 2010; however, each time, Minton called an ambulance
to come and take him home.  Alford claimed that Minton’s bizarre behavior
continued until the nursing homes no longer accepted Minton into their
facilities.  Tisdale then arranged for twenty-four hour in-home care; however,
according to Alford, Minton would “run off people.”

Alford stated that she visited Minton again in 2010.  At this time,
Alford perceived her father as being irrational and unable to take care of
himself.  Alford claimed that during this time, Minton required an adult diaper
but would not allow caregivers to change him, and he would just sit in his
feces.

Alford handled Minton’s finances during her visits.  According to Alford,
Minton used his money to manipulate people.  Minton promised to make them the
beneficiaries of his POD accounts if they would do as he wished.

Randall stated that Tisdale handled the majority of Minton’s finances
because Minton frequently forgot about his bills.  Minton signed the checks
after Tisdale filled in the appropriate information.  According to Randall, Minton
eventually, refused to pay his bills altogether and refused to pay his caregiver,
Promesa Home Health.  When the past-due bill reached $14,000, Promesa
threatened to no longer provide the services to Minton.  According to Randall,
the family used “trickery” to get Minton to pay the bill.  Randall testified
that he went to First National Bank to inquire about Minton’s accounts. 
Randall spoke to Brad Williams, an employee of First National Bank, who told Randall
that Minton had changed the beneficiaries on the POD accounts on numerous
occasions.  Randall testified that Williams did not give Randall details about
the accounts but did inform Randall that he told Minton the last time he
changed the beneficiary on the accounts that he could not make any more changes
to the beneficiary.  Williams related to Randall his fear that when Minton died
numerous people would claim to be the beneficiary of Minton’s accounts.

Garza testified that upon Minton’s death, he spoke to the funeral
director to acquire a copy of Minton’s death certificate.  The funeral director
informed him that he “needed to go to the health department in Austin or wait . . . to get death certificate from the
city.”  Garza stated that the next morning, he drove to Austin and obtained a
copy of Minton’s death certificate.  Garza then went to the Austin branch of
First National Bank and obtained a cashier’s check for $300,000 as the
beneficiary of Minton’s POD accounts.

During the hearing for the temporary injunction, Garza admitted owing
$700,000 with several other parties, to First National Bank.  Garza testified
that he is retired and that his main income from the Texas Department of Public
Safety is exempt from execution.  Garza stated that he did not know his
finances because his wife handled the finances.

According to Garza, First National Bank visited Minton on two occasions when
Garza was present.  On the first visit, Minton removed Tisdale as the
beneficiary of the POD account.  Garza stated that Minton removed Tisdale
because he believed Tisdale had stolen his car.  Minton did not designate a new
beneficiary.

Later in the year, Garza dialed the bank and then handed the phone to
Minton.  Garza testified that Minton wanted to ensure that Garza was the
executor of the accounts.  Minton was informed that Garza was not the
beneficiary and that he needed to make the change by signing new papers.  Minton
then requested that the bank send someone over to make the necessary
corrections.  Garza was present when the representatives from the bank arrived
at Minton’s home.

Garza testified that he was informed that on one occasion Minton slapped
a caregiver in the face and broke his glasses.  Garza also stated that Adult
Protective Services was contacted on several occasions because Minton,

would
not be satisfied with the service that the care provider was providing, you
know, he’d get upset with them for some reason or another and would run them
out of the apartment, you know, say I don’t want your services here.  Of
course, you know the people couldn’t basically leave without, you know, having
some responsibility of calling someone to make sure that he’s protected.

 

According to Garza,
Minton claimed that he played for the Greenbay Packers, which was not true.

After hearing the evidence, the trial court granted the temporary
injunction, enjoining Garza from spending or dissipating the funds he received. 
This appeal followed.

II.         Standard of
Review

We review a trial court’s issuance of a temporary injunction for an abuse
of discretion.  State v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex.
1975); Yarto v. Gilliland, 287 S.W.3d 83, 88 (Tex. App.—Corpus Christi
2009, no pet) (citing Butnara v. Ford Motor Co., 84 S.W.3d 198, 204
(Tex. 2002); El Paso Dev. Co. v. Berryman, 729 S.W.2d 883, 889 (Tex.
App.—Corpus Christi 1987, no writ)). We review the evidence in the light most
favorable to the ruling, and we must indulge all reasonable inferences in the
ruling’s favor.  El Paso Dev. Co., 729 S.W.2d at 886. We will not
substitute our judgment for the trial court’s judgment unless the trial court’s
action was so arbitrary that it surpassed the “bounds of reasonable discretion.” 
Yarto, 287 S.W.3d at 88.

III.        Applicable Law

“A temporary injunction’s purpose is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.”  Butnara, 84
S.W.3d at 204.  A trial court may grant an order of a temporary injunction if
the court finds that:  (1) the applicant has a cause of action; (2) with a
probable right to the relief sought; and (3) may suffer a probable, imminent,
and irreparable injury in the interim. Yarto 287 S.W.3d at 88.  However,
there is no requirement that the applicant will prevail in the final outcome of
the litigation.  Sw. Bell Tel. Co., 526 S.W.2d at 528.

IV.       Analysis

By his first issue, Garza contends that the trial court erred in granting
the children’s motion for a temporary injunction because the children failed to
show a probable right of recovery.  Garza’s second issue is that the children
failed to show a probable, imminent, and irreparable injury or that they lacked
an adequate remedy at law.  However, Garza does not challenge the first element
for granting a temporary injunction, that the children failed to show a cause
of action.

A.        Probable
Right of Recovery

At the outset, we note that an appellant must attack all independent grounds
that support a complained-of ruling.x  Nobility Homes of Tex., Inc, v. Shivers,
557 S.W.2d 77, 83 (Tex. 1977).  If the appellant does not appeal on all
grounds, the reviewing court must “affirm the district court’s judgment on
these unchallenged, separate, and independent grounds. Tex. Dept. of Transp.
v. City of Sunset Valley, 92 S.W.3d 540, 546 (Tex App.—Austin 2002) rev’d
on other grounds 146 S.W.3d 637 (Tex. 2004); see also Nichols v. Byrne,
No. 13-97-456-CV, 1999 Tex. App. LEXIS 609, at *4 (Tex. App.—Corpus Christi
Jan. 28, 1999, no pet.) (mem. op.).

Here, Garza only challenged two of the grounds on which the children sought
an injunction—conversion and undue influence.  The children also requested
injunctive relief on the basis that Minton lacked mental capacity when he executed
the POD accounts and the trial court could have granted the temporary
injunction on this basis.  Because Garza did not challenge this ground on
appeal, we must accept the trial court’s judgment on the unchallenged
independent ground.  See Texas Dept. of Transp., 92 S.W.3d at
546.  We overrule Garza’s first issue.

B.        Probable,
Imminent , and Irreparable Injury/ Adequate Remedy at Law

With regard to Garza’s challenge to the final element, an existing remedy
is adequate if it is as complete and as practical and efficient to the ends of
justice and its prompt administration as is equitable relief.  Ballenger v.
Ballenger, 694 S.W.2d 72, 76 (Tex. App.—Corpus Christi 1985, no writ).   A
legal remedy is not adequate unless it provides the injured party relief that
is clear, full, practical and efficient. TCA Bldg. Co., Inc. v. NW. Res. Co.,
890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no writ).  An applicant for a
temporary injunction does not have an adequate remedy at law if the non-movant
party is insolvent.  Surko Enters. v. Borg-Warner Acceptance Corp., 782
S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ).  The trial court
has discretion to determine the credibility of testimony concerning
insolvency.  Blackthorne v. Bellush, 61 S.W.3d 439, 445 (Tex. App.—San
Antonio 2001, no pet.).

After Minton’s death, Garza went to great lengths to obtain the money in
the POD accounts: he drove to Austin to get the death certificate, instead of
waiting for the certificate to be available from the city and then immediately
went to the Austin branch of the bank to collect the money.  According to
Garza’s testimony, he did not know if he would be able to satisfy a judgment in
favor of the children.  Garza receives a pension check from the Department of
Public Safety that is exempt from execution.  See Tex. Prop. Code Ann. § 42.0021 (West
2010).  Furthermore, the only thing Garza testified to regarding his finances
was that he received a loan for $700,000 from the bank along with several other
people; however he was not certain of the number of people who were also
involved in securing the loan. Garza’s behavior showed a risk to the accounts;
the trial court had discretion to conclude that funds would be dissipated.  The
trial court had discretion to find, based on Garza’s testimony at trial and
other evidence presented, that the possibility of recovery upon final judgment,
without holding the funds at the court, was not a practical, available and
effectual remedy at law.  See Surko Enters., 782 S.W.2d at 225. 
Accordingly, the trial court did not err in granting the children’s petition
for a temporary injunction.  We overrule Garza’s second issues.

V.        Conclusion

We affirm the judgment of the trial court.

________________________

                                                                                                Rogelio Valdez

                                                                                                Chief
Justice

 

Delivered and filed the


23rd day of June, 2011.