

# NUMBER 13-11-00062-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE ESTATE OF RALPH LEE MINTON, DECEASED

### On appeal from the Probate Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Appellant, Artemio Garza ("Garza"), complains about a temporary restraining order in favor of appellees, Randall Lee Minton, Glenda Marcelle Todd, Beverly Regina Alford, and Wanda Lynn Smith, the children of the deceased, Ralph Lee Minton (collectively referred to as the "children"). By two issues, Garza contends that the trial court erred in granting the children's motion for a temporary injunction because the children failed to show a probable right to recovery and that the children had a probable, imminent, and irreparable Injury. We affirm.

## I.     BACKGROUND

On December 2, 2010, Minton died intestate survived by his four children. Before his death, Minton had designated Garza as the beneficiary of his payable on death ("POD") accounts at First National Bank. The children discovered that Garza was the beneficiary of these accounts and that he would receive approximately $400,000. On December 17, 2010, the children filed a petition requesting injunctive relief seeking to prevent Garza from using the $300,000 he had already received from Minton's accounts. On December 21, 2010, the trial court held a hearing on the children's petition for injunctive relief. At the hearing, the trial court heard testimony from Alford, Garza, Randall, and others.

Alford testified that she visited Minton in 2008 and stayed for approximately ten days. Alford claimed that during her visit, Minton exhibited bizarre behavior because Minton propositioned her to have sexual relations with him. According to Alford, Minton was still able to walk with assistance during Alford's 2008 visit.

Alford testified that Minton's health deteriorated in 2010, and he was hospitalized five times. Alford stated that she received numerous calls from the hospital about Minton's bizarre behavior. Alford testified that, she communicated with the hospital staff concerning how to provide care for Minton because he refused to talk to the staff himself. Alford stated that John Tisdale, Minton's friend for over thirty years, assisted with caring for Minton until his death. Alford testified that Tisdale checked Minton into several nursing homes throughout 2010; however, each time, Minton called an ambulance to come and take him home. Alford claimed that Minton's bizarre behavior continued until the nursing homes no longer accepted Minton into their facilities.

2

Tisdale then arranged for twenty-four hour in-home care; however, according to Alford, Minton would "run off people."

Alford stated that she visited Minton again in 2010. At this time, Alford perceived her father as being irrational and unable to take care of himself. Alford claimed that during this time, Minton required an adult diaper but would not allow caregivers to change him, and he would just sit in his feces.

Alford handled Minton's finances during her visits. According to Alford, Minton used his money to manipulate people. Minton promised to make them the beneficiaries of his POD accounts if they would do as he wished.

Randall stated that Tisdale handled the majority of Minton's finances because Minton frequently forgot about his bills. Minton signed the checks after Tisdale filled in the appropriate information. According to Randall, Minton eventually, refused to pay his bills altogether and refused to pay his caregiver, Promesa Home Health. When the past-due bill reached $14,000, Promesa threatened to no longer provide the services to Minton. According to Randall, the family used "trickery" to get Minton to pay the bill. Randall testified that he went to First National Bank to inquire about Minton's accounts. Randall spoke to Brad Williams, an employee of First National Bank, who told Randall that Minton had changed the beneficiaries on the POD accounts on numerous occasions. Randall testified that Williams did not give Randall details about the accounts but did inform Randall that he told Minton the last time he changed the beneficiary on the accounts that he could not make any more changes to the beneficiary. Williams related to Randall his fear that when Minton died numerous people would claim to be the beneficiary of Minton's accounts.

Garza testified that upon Minton's death, he spoke to the funeral director to acquire a copy of Minton's death certificate. The funeral director informed him that he "needed to go to the health department in Austin or wait . . . to get death certificate from the city." Garza stated that the next morning, he drove to Austin and obtained a copy of Minton's death certificate. Garza then went to the Austin branch of First National Bank and obtained a cashier's check for $300,000 as the beneficiary of Minton's POD accounts.

During the hearing for the temporary injunction, Garza admitted owing $700,000 with several other parties, to First National Bank. Garza testified that he is retired and that his main income from the Texas Department of Public Safety is exempt from execution. Garza stated that he did not know his finances because his wife handled the finances.

According to Garza, First National Bank visited Minton on two occasions when Garza was present. On the first visit, Minton removed Tisdale as the beneficiary of the POD account. Garza stated that Minton removed Tisdale because he believed Tisdale had stolen his car. Minton did not designate a new beneficiary.

Later in the year, Garza dialed the bank and then handed the phone to Minton. Garza testified that Minton wanted to ensure that Garza was the executor of the accounts. Minton was informed that Garza was not the beneficiary and that he needed to make the change by signing new papers. Minton then requested that the bank send someone over to make the necessary corrections. Garza was present when the representatives from the bank arrived at Minton's home.

Garza testified that he was informed that on one occasion Minton slapped a caregiver in the face and broke his glasses. Garza also stated that Adult Protective Services was contacted on several occasions because Minton,

> would not be satisfied with the service that the care provider was providing, you know, he'd get upset with them for some reason or another and would run them out of the apartment, you know, say I don't want your services here. Of course, you know the people couldn't basically leave without, you know, having some responsibility of calling someone to make sure that he's protected.

According to Garza, Minton claimed that he played for the Greenbay Packers, which was not true.

After hearing the evidence, the trial court granted the temporary injunction, enjoining Garza from spending or dissipating the funds he received. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's issuance of a temporary injunction for an abuse of discretion. *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *Yarto v. Gilliland*, 287 S.W.3d 83, 88 (Tex. App.—Corpus Christi 2009, no pet) (citing *Butnara v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 889 (Tex. App.—Corpus Christi 1987, no writ)). We review the evidence in the light most favorable to the ruling, and we must indulge all reasonable inferences in the ruling's favor. *El Paso Dev. Co.,* 729 S.W.2d at 886. We will not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it surpassed the "bounds of reasonable discretion." *Yarto*, 287 S.W.3d at 88.

## III. APPLICABLE LAW

5

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnara*, 84 S.W.3d at 204. A trial court may grant an order of a temporary injunction if the court finds that: (1) the applicant has a cause of action; (2) with a probable right to the relief sought; and (3) may suffer a probable, imminent, and irreparable injury in the interim. *Yarto* 287 S.W.3d at 88. However, there is no requirement that the applicant will prevail in the final outcome of the litigation. *Sw. Bell Tel. Co.*, 526 S.W.2d at 528.

## IV. ANALYSIS

By his first issue, Garza contends that the trial court erred in granting the children's motion for a temporary injunction because the children failed to show a probable right of recovery. Garza's second issue is that the children failed to show a probable, imminent, and irreparable injury or that they lacked an adequate remedy at law. However, Garza does not challenge the first element for granting a temporary injunction, that the children failed to show a cause of action.

## A. Probable Right of Recovery

At the outset, we note that an appellant must attack all independent grounds that support a complained-of ruling.x *Nobility Homes of Tex., Inc, v.* Shivers, 557 S.W.2d 77, 83 (Tex. 1977). If the appellant does not appeal on all grounds, the reviewing court must "affirm the district court's judgment on these unchallenged, separate, and independent grounds. *Tex. Dept. of Transp. v. City of Sunset Valley*, 92 S.W.3d 540, 546 (Tex App.—Austin 2002) *rev'd on other grounds* 146 S.W.3d 637 (Tex. 2004); *see also Nichols v. Byrne*, No. 13-97-456-CV, 1999 Tex. App. LEXIS 609, at *4 (Tex. App.—Corpus Christi Jan. 28, 1999, no pet.) (mem. op.).

6

Here, Garza only challenged two of the grounds on which the children sought an injunction—conversion and undue influence. The children also requested injunctive relief on the basis that Minton lacked mental capacity when he executed the POD accounts and the trial court could have granted the temporary injunction on this basis. Because Garza did not challenge this ground on appeal, we must accept the trial court's judgment on the unchallenged independent ground. *See Texas Dept. of Transp.*, 92 S.W.3d at 546. We overrule Garza's first issue.

**B.    Probable, Imminent , and Irreparable Injury/ Adequate Remedy at Law**

With regard to Garza's challenge to the final element, an existing remedy is adequate if it is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief. *Ballenger v. Ballenger*, 694 S.W.2d 72, 76 (Tex. App.—Corpus Christi 1985, no writ). A legal remedy is not adequate unless it provides the injured party relief that is clear, full, practical and efficient. *TCA Bldg. Co., Inc. v. NW. Res. Co.*, 890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no writ). An applicant for a temporary injunction does not have an adequate remedy at law if the non-movant party is insolvent. *Surko Enters. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ). The trial court has discretion to determine the credibility of testimony concerning insolvency. *Blackthorne v. Bellush*, 61 S.W.3d 439, 445 (Tex. App.—San Antonio 2001, no pet.).

After Minton's death, Garza went to great lengths to obtain the money in the POD accounts: he drove to Austin to get the death certificate, instead of waiting for the certificate to be available from the city and then immediately went to the Austin branch of the bank to collect the money. According to Garza's testimony, he did not know if he

7

would be able to satisfy a judgment in favor of the children. Garza receives a pension check from the Department of Public Safety that is exempt from execution. *See* TEX. PROP. CODE ANN. § 42.0021 (West 2010). Furthermore, the only thing Garza testified to regarding his finances was that he received a loan for $700,000 from the bank along with several other people; however he was not certain of the number of people who were also involved in securing the loan. Garza's behavior showed a risk to the accounts; the trial court had discretion to conclude that funds would be dissipated. The trial court had discretion to find, based on Garza's testimony at trial and other evidence presented, that the possibility of recovery upon final judgment, without holding the funds at the court, was not a practical, available and effectual remedy at law. *See Surko Enters.*, 782 S.W.2d at 225. Accordingly, the trial court did not err in granting the children's petition for a temporary injunction. We overrule Garza's second issues.

## V. CONCLUSION

We affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
23rd day of June, 2011.