

# NUMBER 13-09-00411-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STEWART PIERCE, VIVIAN FINCH, GENE VOORHIES,
DONALD EUDALY, AND MARGARET FABIAN,                    Appellants,

v.

CRB PARTNERS, LLC,                                     Appellee.

On appeal from the 197th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez**

In this accelerated interlocutory appeal, appellants, Stewart Pierce, Vivian Finch, Gene Voorhies, Donald Eudaly, and Margaret Fabian, complain about a trial court order granting a temporary injunction filed by appellee, CRB Partners, LLC. By one issue, appellants argue that the trial court abused its discretion in granting a temporary injunction

in favor of appellee because: (1) appellee failed to allege a cause of action against appellants and establish a probable right to recovery after a trial on the merits; and (2) the temporary injunction is impermissibly over-broad. We dissolve the temporary injunction, reverse the judgment of the trial court, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

The dispute in this case centers on various disagreements pertaining to the control and management of common areas and a golf course in an active adult retirement community called Cottonwood Creek XXI, a property owned and operated by appellee. The community is comprised of two subdivisions, Cottonwood Creek Number 1 ("Number 1") and the Fairways at Cottonwood Creek (the "Fairways"). The Number 1 subdivision was established in January 1984, by a developer known as California Investments, Inc., and the Fairways subdivision was established in April 1998. Appellee purchased both sections in 2006, and began to manage common areas in the community, such as the swimming pool, jacuzzi, tennis courts, and the clubhouse and an adjoining golf course, a non-common area. The Number 1 subdivision is governed by documents entitled, "Amended Declaration of Covenants, Conditions and Restrictions of Cottonwood Creek No. 1 Subdivision" (the "Number 1 declarations"), and the Fairways subdivision is governed by documents entitled, "Declaration of Covenants, Conditions and Restrictions for the Fairways at Cottonwood Creek Subdivision" (the "Fairways declarations"). Shortly after appellee purchased the property, numerous disputes with appellants arose.

Appellants claim to be members of the "Cottonwood Creek Property Owners, Inc." ("CCPO"), an organization allegedly formed with the intent to be the official representative

2

and liaison for property owners in the community with appellee.[1] Appellants allegedly made numerous requests to have items repaired on the property and asked appellee to allow the CCPO to inspect appellee's books and records because the CCPO suspected that annual dues and assessments routinely paid to appellee were not being used for the benefit of the community but, rather, to run appellee's other business ventures. Apparently, appellee secured bids to repair the items that appellants had deemed broken, but appellants believed that the bids were unreasonably costly.

Per various provisions in the subdivisions' governing documents, appellee was authorized to recoup its costs of repair by requiring property owners in the community to pay a special assessment. As such, appellee notified the property owners of the costs of the repairs and the necessity of a special assessment on January 1, 2009. However, in order to recoup the costs of the repairs, the subdivisions' governing documents required that the community's property owners vote to approve the repairs. Therefore, appellee sent the CCPO's acting president at the time, Ted Machner, several letters requesting that the repairs and the accompanying special assessment be voted on by the property owners. On January 14, 2009, Machner sent appellee a letter stating that the CCPO believed that the costs of the repairs were unreasonably high and notifying appellee that the CCPO would not be submitting the repairs and the special assessment proposals to the community's property owners for a vote.

Appellee also allegedly denied appellants access to appellee's books and records

---

[1] The record reflects that the Cottonwood Creek Property Owners, Inc. (the "CCPO") filed documents with the Texas Secretary of State's Office and was subsequently incorporated on January 5, 1995. Appellee, however, argued at the June 17, 2009 hearing that the CCPO did not follow the procedures set forth in the subdivision's governing documents to become a registered property owners association for the community. Appellee appeared to rely on the fact that the CCPO left out the term "Association" in its name to support its argument that the CCPO was not the property owners association for the community. In any event, at the alleged suggestion of appellee, several other owners of the community formed the Cottonwood Creek Property Owners Association, Inc., which was incorporated on May 15, 2009, and purports to be the true property owners association for the community.

3

because the CCPO had previously conducted an inspection of appellee's books and records. In fact, on October 8, 2008, the CCPO issued a report indicating that the information provided by appellee was complete and accurate and stating that appellee was not charging the community's property owners for some of the expenses appellee incurred in the management of the property. The report also mentioned that appellee had incurred heavy losses in the managing of the property and that subsequent dues should be increased to allow appellee to break even after making necessary repairs to the community. Patricia M. Lopez, former treasurer of the CCPO from February 2008 to January 2009, filed a statement indicating her role in the creation of the report and noted that "[a]ll documents presented to the Committee by CRB Partners, LLC were originals and were examined by the Commission in great detail before the final assessment review report was written" and that "the final report was thorough and accurate in all respects."

Finally, on April 22, 2009, the CCPO sent appellee and all community property owners a letter stating that appellee had allegedly violated several contractual obligations, including the following:

FAILURE TO ACCOUNT for expenditures of monthly assessment fees paid directly to CRB. These monies are to be used exclusively for upkeep and maintenance of the common area; any request for [an] increase in the amount of assessments must be justified and supported by financial records acceptable to the [B]oard.

MULTIPLE BUSINESSES are being operated out of the clubhouse in violation of the covenants. No attempt has been made by CRB to discuss these matters with the [B]oard or seek approval for such use.

ALL REVENUE derived from use or rental of the common area, other than use authorized by the Board for the property owners, are to be accounted for and used exclusively for the benefit and enjoyment of the members of the corporation.

PROOF OF INSURANCE required by the covenants for the benefit and protection of the property owners is denied by CRB.

4

> THE BOARD OF DIRECTORS is the designated liaison between CRB and the Cottonwood Creek Property Owners Association, Inc., and is confirmed by vote of the members. CRB has no right to contravene this authority in any manner involving interpretation or application of the by-laws and covenants governing this relationship.

Also in its letter, the CCPO requested that "all due monthly assessment fees be withheld from CRB" to be held in "a trust account established to escrow these funds pending resolution of these matters." This letter was signed by each of the appellants in their representative capacity as officers of the CCPO.

In response to the CCPO's April 22, 2009 letter and appellants' other actions, appellee filed a verified petition and, among other things, an application for a temporary injunction, a temporary restraining order, and a permanent injunction. In this filing, appellee alleged that appellants were tortiously interfering with contracts pertaining to the creation of the community, the Number 1 and Fairways declarations, by circulating letters to residents of the community that: (1) "fabricated allegations implying [appellee] was in violation of [its] duties to the residents"[2]; (2) "falsely accused [appellee] of many acts which are unsubstantiated by any evidence"; and (3) encouraged residents to not pay assessment dues directly to appellee but, rather, to the trust account created by appellants. As a result of appellants' instructions regarding the payment of annual assessment dues, appellee asserted that more than $7,000 had been diverted into appellants' trust account.[3] Appellee further alleged that appellants' actions had forced appellee into "dire financial straits" and that it will be "irreparably injured if Defendants are

_____

[2] Additionally, appellee alleged, at trial and on appeal, that appellants repeatedly made disparaging comments regarding the community to prospective buyers, which, in turn, caused buyers to avoid purchasing property in the community.

[3] At the hearing on appellee's temporary injunction, appellee asserted that appellants had "convinced approximately 40 or so of the property owners to pay" their annual assessment fees to the trust account.

5

not immediately enjoined from tortuously [sic] interfering in [appellee's] day to day business." Moreover, appellee requested that the trial court issue a temporary injunction:

(A) restraining Defendants and their officers, agents, servants, employees, representatives, assigns and/or any other persons or entities acting on their behalf or in concert or participation with them from directly or indirectly doing, any of the following:

     (a)    interfering in any way with the management, operation, and maintenance of Cottonwood Creek including, but not limited to:

     (b)    interfering with or thwarting the collection of dues and[/]or assessments;

     (c)    interfering with or thwarting the imposition of assessments for needed repairs;

     (d)    interfering with or thwarting [appellee's] ability to manage, operate, and maintain the property in a professional manner to the satisfaction of the abiding . . . and paying residents.

     (e)    interfering with or thwarting the sale of potential homes, and[/]or lots by spreading malicious and false rumors.

On June 4, 2009, the trial court granted appellee's request for a temporary restraining order and set the hearing on appellee's temporary injunction request for June 17, 2009.

Appellants filed their original answer on June 15, 2009, generally denying all of the allegations contained in appellee's verified petition. Appellants' original answer also included a plea supported by verified affidavits stating that appellants were not proper parties to the underlying suit because the actions about which appellee complains were allegedly engaged in by appellants as "duly elected officers and board members" of the CCPO.[4] *See* TEX. R. CIV. P. 93(2) (providing that a pleading verified by affidavit must be filed where it is alleged that "plaintiff is not entitled to recover in the capacity in which he

_____

[4] The record reflects that, at the time of this suit, the Board of Directors for the CCPO was comprised of the following individuals: (1) Stewart Pierce as President; (2) Vivian Finch as Vice-President; (3) Gene Voorhies as Secretary; (4) Donald Eudaly as Treasurer; and (5) Margaret Fabian as Director. It is not entirely clear from the record before us as to when appellants assumed their positions with the CCPO.

6

sues, or that the defendant is not liable in the capacity in which he is sued"). Also, on June 15, 2009, the CCPO filed a verified original petition in intervention, seeking equitable relief, a declaratory judgment, and a temporary and permanent injunction against appellee.

In its verified petition in intervention, the CCPO alleged that appellee: (1) "failed and refused to make the books and records, including financial records of Cottonwood Subdivision[,] reasonably available to homeowners"; (2) improperly operated "[v]arious businesses" out of the subdivision clubhouse; (3) "used the assessments for purposes other than those exclusive purposes set out in the covenants"; (4) "failed to use all fees collected for use of the common area ' . . . exclusively to promote the recreation, health, safety and welfare of the residents . . .' as required by Cottonwood Creek No. 1 Covenants, page 5, Article IV, Section 4.2"; (5) "failed to maintain the insurance required by Cottonwood Creek Subdivision No. 1 Covenants, page 7, Article IV, Section 4.9(a)"; and (6) "harassed owners, intimidated owners and attempted to run the Cottonwood Subdivision in a dictatorial fashion despite the protections set out in the applicable covenants."

On June 19, 2009, after conducting a hearing, the trial court extended appellee's temporary restraining order. On June 23, 2009, the trial court amended its order extending appellee's temporary restraining order by adding the following language: "The Court further orders that all monies collected by the Defendants as representatives of Cottonwood Creeks [sic] Property Owners[,] Inc. be returned to CRB Partners[,] LLC . . . ."

Subsequently, on August 5, 2009, the trial court conducted a hearing on the CCPO's request for injunctive relief. After hearing arguments from all parties involved, the trial court took the matter under advisement. On September 3, 2009, the trial court entered its first supplemental order granting appellee's request for a temporary injunction. In its order, the

7

trial court ordered appellants enjoined from the following actions pertaining to the subdivision:

> (a) interfering in any way with the management, operation, and maintenance of Cottonwood Creek including, but not limited to:
>
> (b) intrfering with or thwarting the collection of due and[/]or assessments;
>
> (c) interfering with or thwarting the imposition of assessments for needed repairs;
>
> (d) interfering with or thwarting CRB Partners L.L.C.'s ability to manage, operate and maintain Cottonwood Creek.[5]

The order further stated that the cause was set for a trial on the merits for January 19, 2010, and that appellee had deposited $1,000 with the Court Clerk in the form of a bond. Appellants subsequently filed their notice of accelerated interlocutory appeal, challenging the trial court's September 3, 2009 order granting appellee's temporary injunction request. *See* TEX. R. APP. P. 28.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon 2008).

## II. STANDARD OF REVIEW

The decision to grant or deny a temporary injunction is within the sound discretion of the trial court. *See Yarto v. Gilliland*, 287 S.W.3d 83, 89 (Tex. App.–Corpus Christi 2009, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)); *see also Freddie Records, Inc. v. Ayala*, No. 13-07-00363-CV, 2009 Tex. App. LEXIS 7681, at **9-10 (Tex. App.–Corpus Christi Sept. 30, 2009, no pet.) (mem. op.). A reviewing court should reverse an order granting injunctive relief only if the trial court abused its discretion. *Yarto*, 287 S.W.3d at 89. The reviewing court must not substitute its own judgment for the trial court's unless the trial court's action was so arbitrary that it exceeded the bounds of

---

[5] The trial court refused to enjoin appellants from making any disparaging comments regarding appellee or the community.

8

reasonable discretion. *Id.* In reviewing the trial court's order granting injunctive relief, we are to draw inferences from the evidence in the manner most favorable to the trial court's ruling. *London Mkt. Insurers v. Am. Home Assur. Co.*, 95 S.W.3d 702, 705 (Tex. App.–Corpus Christi 2003, no pet.). A trial court does not abuse its discretion when it bases its decision on conflicting evidence unless the evidence does not reasonably support the trial court's decision. *See Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 717 (Tex. App.–Corpus Christi 2001, no pet.). Moreover, on interlocutory appeal of an order granting injunctive relief, we do not reach the merits of the dispute; instead, we only determine whether the record supports the trial court's exercise of discretion. *See Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 552 (Tex. App.–Dallas 2009, no pet.); *see also Freddie Records, Inc.*, 2009 Tex. App. LEXIS 7681, at *10.

## III. APPLICABLE LAW

A temporary injunction is an extraordinary remedy that: (1) does not issue as a matter of right; and (2) may not be granted when there is a plain and adequate remedy at law. *See McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984); *see also Finnegan v. Mercer*, No. 10-09-00250-CV, 2009 Tex. App. LEXIS 9827, at *7 (Tex. App.–Waco Dec. 30, 2009, pet. filed) (mem. op.). The purpose of a temporary injunction is to maintain the status quo between litigants. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove the following elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* The party seeking the injunction bears the burden of proving each of the elements articulated in *Butnaru*. *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.–Corpus Christi 2007, pet. denied); *see Butnaru*, 84 S.W.3d at 204.

9

In their first issue, appellants argue that appellee was not entitled to a temporary injunction because appellee did not assert a cause of action against appellants and establish a probable right to recovery. Specifically, appellants assert that appellee "has no claim or cause of action against [a]ppellants individually, and no claim or cause of action against [a]ppellants as members of the board of directors of Cottonwood Creek Property Owners, Inc." Appellee contends that the CCPO is not a recognizable property owners association within the context of the subdivisions' governing documents, and, thus, the CCPO does not have any legitimate claim to authority. Appellee further contends that appellants have interfered with appellee's ability to impose assessments on property owners, collect payments, and maintain and operate the common areas in the subdivision; therefore, the trial court did not abuse its discretion in granting the temporary injunction so as to maintain the status quo, pending a trial on the merits of the injunction.

## A. Applicable Law

We construe appellants' first contention that appellee failed to assert a cause of action against appellants as a capacity challenge. A party must have both standing to sue and capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Neither party has advanced a standing argument on appeal. "[T]he issue of capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.'" *Id.* (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 2D 1159, at 441 (2d ed. 1990)). "[A] party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* at 848-49 (citing *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)); *see El T. Mexican Rests. v. Bacon*, 921 S.W.2d 247, 250 (Tex. App.–Houston [1st Dist.] 1995, no writ) (stating that capacity is a

party's legal authority to go into court to prosecute or defend a suit). Standing may be raised for the first time on appeal; however, capacity must be raised by verified plea in the trial court or else it is deemed waived. *See Lovato*, 171 S.W.3d at 849; *see also Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003); *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988).

**B.      Discussion**

As noted earlier, appellants filed verified affidavits ostensibly contesting their capacity to be sued. *See* TEX. R. CIV. P. 93(1). Thus, we conclude that appellants have preserved their capacity challenge for appeal. *See Sixth RMA Partners, L.P.*, 111 S.W.3d at 56; *Pledger*, 762 S.W.2d at 146; *see also* TEX. R. CIV. P. 93(1).

In its verified petition, appellee alleged, among other things, that appellants, in their individual capacities, tortiously interfered with the subdivisions' governing documents, which specify appellee's duty to "manage, operate, and maintain Cottonwood Creek," by fabricating allegations and falsely accusing appellee of various violations and by encouraging residents to not pay annual assessments to appellee directly but, rather, to appellants' trust account. In addition, appellee asserted that appellants' "tortuous [sic] actions have caused substantial injury to Plaintiffs [appellee] by ruining their reputation, creating a hostile environment, and potentially loss of millions of dollars in lot and home sales to potential buyers and[/]or investors and loss of the financial investment of abiding residents." *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1995) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995)) ("To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss.").

11

Despite the allegations contained in appellee's verified petition, appellants argue that they are not liable for any wrongdoing because they were acting as officers and directors of the CCPO, and therefore, appellee should have sued the CCPO rather than appellants individually. Appellee counters that the CCPO is a "sham" organization that was not formed within the parameters of the subdivision's governing documents.[6]

Section 2.10 of the Number 1 subdivision's amended declarations provides that:

"PROPERTY OWNERS ASSOCIATION" shall mean the Cottonwood Creek Property Owners Association, Inc., a non-profit corporation organized under the laws of the State of Texas, formed by the OWNERS to:

(a) Act as liaison between DECLARANT [appellee] and OWNERS

(b) Perform such duties as are designated in the corporate By-laws

(c) In the future, to assume responsibility for the upkeep, management, and maintenance of the COMMON AREA, located in Cottonwood Creek Subdivision No. 1, for the benefit of the OWNERS, and for managing the affairs of the subdivision after DECLARANT has relinquished such responsibility.

In arguing on appeal that the CCPO is a "sham organization," appellee seems to rely on the fact that the CCPO left out the term "Association" in its corporate name when it was incorporated with the State of Texas in 1995.

A review of the record demonstrates that appellee and previous owners and managers of the community have routinely corresponded with CCPO representatives as if the CCPO was the property owners association for the community and essentially recognized the CCPO as the community's property owners association. In fact, the record contains: (1) correspondence between Machner, a previous president of the CCPO, and appellee; (2) reports and letters from the CCPO to appellee regarding a past inspection of

---

[6] Appellee even goes as far as comparing the CCPO to the "Republic of Texas" and argues that the CCPO "is a self-proclaimed, self-anointed, and illegitimate parody of a true property owners' association that does not even have the proper name called for under the Declarations that allow for the creation of a legitimate owners' association."

12

appellee's books and records by the CCPO; and (3) correspondence between appellants and appellee regarding this dispute. Furthermore, it was argued at the June 17, 2009 hearing that, since its 1995 incorporation, the CCPO has served as the community's property owners association and liaison with the owners and managers of the community. The trial court even recognized at the June 17, 2009 hearing that: "To me, I think, you know, they just incorporated incorrectly. They just didn't title it correctly to go with the form, but it [the CCPO] is the organization [the property owners association]." Therefore, based on the record before us, we find appellee's argument that the CCPO is a "sham organization" to be unpersuasive.

Because we have concluded that appellee's argument that the CCPO is a "sham organization" to be unpersuasive, we continue with our analysis as to whether appellants had the capacity to be sued individually. The Texas Supreme Court has held that:

> Corporations, by their very nature, cannot function without human agents. *As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.* For this reason, we have held that an officer or director [of a corporation] may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation. *Even the officers and directors of an ordinary corporation, while acting as such, are not personally liable even though they recommend a breach of a valid contract.*

*Holloway*, 898 S.W.2d at 795 (internal citations and quotations omitted) (emphasis added).

The April 22, 2009 letter, which instigated this lawsuit, was signed by each of the appellants in their representative capacity as officers and directors of the CCPO. None of the appellants signed the April 22, 2009 letter or, for that matter, any other documents in the record in their individual capacity. Appellants argued in the trial court and on appeal that they engaged in the complained-of actions as officers or directors of the CCPO. Moreover, appellee has neither presented any evidence indicating that appellants engaged

13

in the complained-of actions in their individual capacities rather than as representatives of the CCPO, nor obtained a judgment against the CCPO regarding the complained-of actions.

Based on the foregoing, we cannot say that appellants would be liable in the capacity in which they were sued; instead, appellee should have joined and obtained a judgment against the CCPO.[7]  *See* TEX. R. CIV. P. 93(2); *Pabich v. Keller*, 71 S.W.3d 500, 507 (Tex. App.–Fort Worth 2002, pet. denied) ("The court will not hold individual officers, directors, or stockholders liable on the obligations of a corporation except where it appears the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations.")[8] (citing *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex. 1968); *J & J Marine, Inc. v. Le*, 982 S.W.2d 918, 927 (Tex. App.–Corpus Christi 1998, no pet.)); *3-D Elec. Co., Inc. v. Barnett Constr. Co.*, 706 S.W.2d 135, 138 (Tex. App.–Dallas 1986, writ ref'd n.r.e.) (same); *see also Lovato*, 171 S.W.3d at 848-49; *Bacon*, 921 S.W.2d at 250. Because appellants lacked capacity in this case, appellee has failed to establish the first

---

[7] The record does reflect that the CCPO intervened in this dispute on June 15, 2009; however, the trial court's first supplemental order granting appellee's temporary injunction states that the injunction is effective against Pierce, Finch, Voorhies, Eudaly, and Fabian in their individual capacities. The record does not contain an order enjoining the CCPO from engaging in the complained-of actions.

In any event, we note that rule 683 of the Texas Rules of Civil Procedure provides that a temporary injunction against the CCPO would be "binding . . . upon the parties to the action, their officers, agents, servants, employees, and attorneys . . . ." TEX. R. CIV. P. 683. Thus, appellants likely would be enjoined from engaging in the complained-of actions if appellee made the CCPO a party to the suit and the trial court determined that injunctive relief is warranted in this case. *See id.*

[8] On appeal, appellee argues that the Fort Worth Court of Appeals' decision in *Pabich v. Keller* supports appellee's contention that appellants were proper parties to the underlying lawsuit because appellants allegedly used the corporate structure of the CCPO as a sham to perpetrate a fraud or avoid liability. *See* 71 S.W.3d 500, 507 (Tex. App.–Fort Worth 2002, pet. denied). We do not find this argument to be persuasive given that: (1) the owners of the community have regularly corresponded and ostensibly recognized the CCPO as the community's property owners association; and (2) the CCPO has only directed that the annual assessments of the property owners be held in trust until this dispute is resolved. Appellee has not provided any evidence that the CCPO has spent the money in the trust account so as to perpetrate a fraud on appellee.

temporary injunction element—that it asserted a cause of action against a defendant. *See Butnaru*, 84 S.W.3d at 204; *see also McAllen Police Officers Union*, 221 S.W.3d at 893. Because appellee failed to establish the first temporary injunction element, we further conclude that the trial court abused its discretion in granting appellee's temporary injunction request. *See Butnaru*, 84 S.W.3d at 204; *see also Yarto*, 287 S.W.3d at 89; *Harbor Perfusion, Inc.*, 45 S.W.3d at 717. Accordingly, we sustain appellants' first issue to the extent that appellants lacked the capacity to be sued individually.

## V. Conclusion

Having sustained appellants' first issue, we need not address their remaining contentions. *See* TEX. R. APP. P. 47.1. Accordingly, we dissolve the temporary injunction, reverse the judgment of the trial court, and remand for proceedings consistent with this opinion.

_____

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
1st day of April, 2010.

15